Richard E. Gardiner (Pro Hac Vice to be submitted)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice to be submitted)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel: (775) 323-1601
Fax: (775) 348-7250
Email: rdelong@parsonsbehle.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, | Case No. 2:10-CV-01683-GMN-PAL |
| Plaintiff, | |
| v. | |
| VIRGINIA CITIZENS DEFENSE LEAGUE, INC., PHILLIP VAN CLEAVE, AND JIM SNYDER, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. RULES 12(b)(2)and 12(b)(6)**

Defendants Virginia Citizens Defense League, Inc. ("VCDL"), Philip Van Cleave, and

Jim Snyder, by and through their undersigned counsel, hereby move this honorable Court,

pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(6), to dismiss the Complaint filed against

them by Plaintiff Righthaven LLC. The case must be dismissed as to all Defendants due to lack

4845-9396-6344.1

1    of personal jurisdiction and failure to state a claim on which relief can be granted.

2        The reasons in support of this motion are set forth in the following Statement of Points

3    and Authorities in Support of Defendants' Motion to Dismiss.

4

### STATEMENT OF POINTS AND AUTHORITIES
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

5

### FACTS

6

7        This is an action for alleged copyright infringement.[1]  The Complaint alleges that VCDL,

8    its President (Philip Van Cleave), and Vice-President (Jim Snyder), reproduced, distributed, and

9    "willfully engaged" in copyright infringement of a short news article that originally appeared on

10    the Las Vegas Review Journal website.  Cplt. ¶¶ 36, 38, 40-42; Cplt. Ex. 1.  The article related to

11    a successful businessman, West Point graduate, and military veteran who had a permit to carry a

12    concealed handgun, and was shot and killed by police while exiting a Costco store. Cplt. Ex. 1.

13    Plaintiff Righthaven LLC alleges that it holds the copyright to this article, such rights having been

14    transferred to it from the original owner.  Cplt. ¶¶ 24, 26; Cplt. Ex. 3.  Righthaven is an entity

15    engaged in acquiring copyrights to articles, in large part from the Las Vegas Review Journal, and

16    then suing people for alleged infringement.   It has sued Defendants because of the alleged

17    unauthorized posting of the article on the website "vcdl.org." Cplt. ¶¶ 5, 7, 9.

18

19    / / /

20    / / /

21

22

23    ---

[1]  The facts recounted herein are from the Complaint or attachments to the Complaint, from matters of public record of which the Court can take judicial notice pursuant to Fed. R. Evid. 201, or from the Declarations of Philip Van Cleave and Jim Snyder filed herewith.  The Declarations contain statements of fact related to personal jurisdiction, which may be included by affidavit or declaration in support of a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  *Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986).  Defendants do not request that the Court consider matters outside the pleadings and jurisdictional documents  for purposes of the Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, and do not consent to turning the Rule 12(b)(6) motion into a motion for summary judgment.  Should the instant motions be denied, Defendants may file a separate motion for summary judgment on issues addressed by the 12(b)(6) motion and possibly other issues.

        The Complaint alleges that VCDL is a "Virginia domestic corporation."  Cplt. ¶ 4.  VCDL

is, in fact, a Virginia domestic nonstock (*i.e.* nonprofit) corporation that is tax exempt as a

charitable and educational social welfare organization under § 501(c)(4) of the Internal Revenue

Code.[2]  As described by the President of VCDL, the Virginia Citizens Defense League "is a non-

profit, non-partisan, grassroots organization dedicated to advancing the fundamental human rights

of all *Virginians* to keep and bear arms as guaranteed by the Second Amendment to the United

States Constitution and Art. I. Section 13 of the Constitution of the Commonwealth of *Virginia*."

(emphasis added).  *See* Exhibit A, Declaration of Philip Van Cleave ¶ 2 ("Van Cleave Decl.").

        VCDL has no contacts with Nevada.  According to the Van Cleave Decl. ¶ 5:

> VCDL has no members in Nevada.  It conducts no business in
> Nevada, is not qualified to do business in Nevada, has no officers or
> employees resident in Nevada, has no registered agent in Nevada,
> and has conducted no transactions of which I am aware in Nevada.
> It has no offices or property in Nevada.  It has no bank accounts,
> contracts, or other financial interests in that state.

        Instead, almost all members of VCDL are residents of Virginia.  Van Cleave Decl. ¶ 6.

VCDL's grassroots activities are limited almost exclusively to Virginia, with occasional activities

in adjoining jurisdictions such as D.C. and/or Maryland.  *Id*.  It conducts no activities specifically

aimed at or  targeted toward Nevada.  *Id*.

        Neither Mr. Van Cleave nor Mr. Snyder resides in Nevada.  Both are residents of Virginia

and have been for many years.  Van Cleave Decl.  ¶ 10; *see* Exhibit B, Declaration of Jim Snyder

¶ 4 ("Snyder Decl.").  Neither of them conducts any business or transactions in Nevada.  *Id*.

Neither of them has any real or personal property, bank accounts, financial interests, agents,

---

[2] Section 501(c)(4) organizations include "Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, …and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes."  26 U.S.C. § 501(c)(4). The educational and civic purposes of VCDL, consistent with its § 501(c)(4) status, are set forth in Article II of the certified copy of the Amended and Restated Articles of Incorporation which is included as Attachment 1 to the Van Cleave Declaration (Exhibit A).  A true copy of the letter from the Internal Revenue Service recognizing VCDL as a 501(c)(4) organization is included as Attachment 2 to the Van Cleave Declaration (Exhibit A).

1    contracts, or other contacts with Nevada.  They have infrequently traveled to or through Nevada

2    for recreational purposes unrelated to VCDL or this lawsuit.  Van Cleave Decl.  ¶ 10; Snyder

3    Decl. ¶ 4.  In short, these two individuals have no pertinent contacts with Nevada whatsoever.

4    According to the Complaint, Mr. Van Cleave reproduced an "unauthorized copy" of a

5    "Righthaven owned" "literary" work entitled "Slaying of Army veteran shocks friends."  Cplt.  ¶

6    9.  This was an article that appeared on the Las Vegas Review Journal's website on or about July

7    12, 2010.  Cplt. ¶¶ 12, 25; Cplt. Ex. 1.   The Complaint states that Mr. Van Cleave "posted said

8    unauthorized copy" on a website known as "vcdl.org" on or about July 22, 2010.  Cplt. ¶¶ 5, 9,

9    14.   It is alleged that "Defendants" displayed this "infringement" on "vcdl.org," which the

10   Complaint refers to as "the Website."  Cplt. ¶¶ 5, 7, 14.  The posting complained of (*see* Cplt. Ex.

11   2) expressly states at the outset  that another individual emailed the article to Mr. Van Cleave.

12   Mr. Van Cleave confirms in his declaration that a link to the article was emailed to him by

13   a VCDL member who thought the article was germane to VCDL's goals.  Van Cleave Decl. ¶ 8.

14   Mr. Van Cleave did not copy the article from the website of the Las Vegas Review Journal or

15   from any other Nevada source.  Van Cleave Decl. ¶ 9.  Upon reading the article, he thought that it

16   was something that would be educational for VCDL's members.   Van Cleave Decl. ¶ 9.

17   Accordingly, he forwarded the email internally and the article was ultimately included in the

18   materials contained in Exhibit 2 to the Complaint in this case.  Van Cleave Decl. ¶ 9.

19   As noted by Mr. Van Cleave, the materials contained in Exhibit 2 to the Complaint were

20   compiled for purposes of educating VCDL members in the Commonwealth of Virginia regarding

21   subjects of interest to those who own firearms and may carry firearms legally.  Van Cleave Decl.

22   ¶ 7.   These materials were not directed toward any individuals or corporations in Nevada, or

23   toward Nevada as a state.  Van Cleave Decl. ¶ 7.  Two links back to the Las Vegas Review

24   Journal's website were provided.  Cplt. Ex. 2.

PARSONS
BEHLE &
LATIMER

4845-9396-6344.1                          - 4 -

Mr. Snyder also did not personally post the article on vcdl.org, and did not direct any other individual to do so.  To the best of his recollection, he took no action regarding this article and was unaware of it until after this lawsuit was filed.  Snyder Decl. ¶ 3.

The copy of the article posted on the Review Journal's website contained several "buttons" at the top of the article on which the reader could click.   Cplt. Ex. 1.  One button invites the reader  to "save this" (that is, make an electronic copy) of the article.  Another invites the reader to "email this" article to other people.  At the top, there are also two separate buttons inviting viewers to print the article (that is, make a hard copy of it).   At the bottom of the webpage, there are additional buttons which again invite readers to "email this," "save this," and "click to print."  *Id.*

In this case, the news report at issue was published on July 12, 2010, and the alleged infringing post on the Website is said to have occurred on July 22, 2010.  Cplt. ¶¶ 25, 27. According to the Complaint, Righthaven submitted its application to register the news report to the U.S. Copyright Office on September 9, 2010. Cplt. ¶ 26.  Righthaven does not allege in the Complaint that it owned the copyright on or about July 22, 2010, or that it acquired rights to sue for alleged infringements that occurred prior to September 9, 2010.

Righthaven is an entity that, according to this court's docket, has filed at least 172 lawsuits in this district in the past eight months alleging copyright infringement, generally relating to news reports appearing in the Las Vegas Review Journal.  A printout from the Court's ECF docket is attached as Exhibit C, and Defendants request that the Court take judicial notice of it.[3]  The vast majority of these suits are against non-Nevada defendants, for whom litigation in Nevada is inconvenient and expensive.  Many of these suits, as shown by the court's docket,

---

[3] Courts can take notice of their own docket entries.  *Griffin v. United States*, 109 F.3d 1217, 1218 n.1 (7th Cir. 1997) (citing cases).

PARSONS
BEHLE &
LATIMER

settle and are dismissed within a short period after filing, presumably by defendants who will pay money to avoid the cost of litigation in a distant forum. Exhibit C.

Additional facts will be discussed as relevant to the arguments below.

### ARGUMENT

**I.     THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

It is well established that, in connection with a Rule 12(b)(2) motion, the defendant may file declarations or affidavits for the purpose of showing that the court lacks jurisdiction. *Scott v. Breeland,* 792 F.2d 925 (9th Cir. 1986). When a defendant moves to dismiss for lack of personal jurisdiction, the *plaintiff* has the burden of demonstrating that the court *has* jurisdiction over the particular defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). As the Ninth Circuit described in more detail in *Scott*:

> The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 (9th Cir.1977); *see also Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984), cert. denied, --- U.S. ---, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir.1977).

*Scott*, 792 F.2d at 927.

Even though the burden of establishing jurisdiction is on Plaintiff, the matters alleged by the Complaint and its attachments, together with the declarations by Mr. Van Cleave and Mr. Snyder, demonstrate beyond doubt that there is no personal jurisdiction over any of the defendants in this case. Defendants have identified no ties to Nevada by VCDL, Mr. Van Cleave, or Mr. Snyder other than the allegations relating to this supposed infringement, which are

PARSONS BEHLE & LATIMER

4845-9396-6344.1

insufficient to establish personal jurisdiction under the specific Ninth Circuit law applicable to this fact pattern.

Defendants are aware of several decisions by judges of this Court upholding personal jurisdiction over out of state defendants in infringement cases brought by Righthaven. *See, e.g., Righthaven, LLC v. Dr. Shezad Malik Law Firm, P.C.,* No. 2:10-cv-0636-RLH-RJJ (order filed 9/2/10); *Righthaven, LLC v. Industrial Wind Action Corp.*, No. 2:10-cv-601-RLH-PAL (order filed 9/24/10); *Righthaven LLC v. MajorWager.Com, Inc.*, No. 2:10-cv-00484-GMN-LRL (order filed 10/28/10). However, these decisions rely principally on an older and factually different Ninth Circuit case, *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), that has been superseded by more recent authority specifically relating to allegedly infringing "passive websites," as in the case at bar. In those more recent cases, the Ninth Circuit has held that the mere fact that the infringement occurs with respect to copyrighted or trademarked material produced or located within the forum, occurrence of the injury to a plaintiff within the forum, and knowledge that the plaintiff and injury are within the forum state, is *not* sufficient to sustain personal jurisdiction. *See Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124 (9th Cir. 2010) (superseding the withdrawn opinion in same case reported at 575 F.3d 981(9th Cir. 2009); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000).[4]

For courts to have "general jurisdiction" over a non-resident of the forum, the plaintiff must show that the defendant has engaged in "continuous and systematic general business

---

[4] In the three cases brought by Righthaven cited above in which judges of this District have upheld personal jurisdiction over out of state defendants, it does not appear that the parties brought this newer, more specific authority squarely to the attention of the Court. Briefing filed by defendants in those three cases seems to cite *Brayton Purcell* and *Pebble Beach* either not at all, sporadically, or largely for different propositions. Certainly, none of the opinions in those three cases relied on these more recent and specific Ninth Circuit cases.

contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that "approximate physical presence" in the forum state.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  There are no allegations in the Complaint that would support a finding that any of these defendants have continuous, systematic general business contacts that approximate a physical presence within Nevada.  The declarations of Mr. Van Cleave and Mr. Snyder demonstrate that there are virtually no contacts at all, and none that would even come close to satisfying this test.  *See* Exhibits A and B hereto.

Alternatively, "specific jurisdiction" may sometimes be found based on the acts giving rise to the suit.  Because Nevada has a long arm statute (Nev. Rev. Stat. § 14.065) that exercises personal jurisdiction to the extent permitted by due process, the Ninth Circuit has applied a three part test to determine if defendants have sufficient contacts with the forum state to be haled into its courts.  The plaintiff must demonstrate that:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

With regard to the first prong, the Ninth Circuit has refined the test to be whether the defendant has either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum.  *Schwarzenegger v. Fred Martin Motor Co*, 374 F.3d 797, 802 (9th Cir. 2004).  As the Ninth Circuit noted in *Schwarzenegger*, "availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id*.  Where copyright is

the underlying issue, "purposeful direction" is the "proper analytical framework." *Brayton Purcell,* 606 F.3d at 1128.

To determine whether a defendant has "purposefully directed" his conduct or actions toward the forum state, a further three part test is employed.  In recent cases employing that three part test, the Ninth Circuit has emphasized that "express aiming" is necessary to support personal jurisdiction, and that operating a passive website that may infringe on a trademark or copyrighted material within the forum state is not sufficient, even if it causes foreseeable harm to a plaintiff there who holds the intellectual property rights.  As the Court stated in *Pebble Beach*:

> In *Calder v. Jones*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). We have commonly referred to this holding as the "Calder effects test." *See, e.g., Bancroft*, 223 F.3d at 1087. To satisfy this test the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1088 (*citing Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998)). However, referring to the *Calder* test as an "effects" test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong - the effects prong - holding that "something more" is needed in addition to a mere foreseeable effect. *Bancroft*, 223 F.3d at 1087. Specifically we have stated,
>> "Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction. We have said that there must be 'something more'. . . . We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state."

*Pebble Beach*, 453 F.3d at 1156 (quoting *Bancroft*, 223 F.3d at 1087).  In *Pebble Beach*, the Court held that allegedly infringing activity on a passive website outside the forum jurisdiction, even if the Defendant may have known that it would cause harm to a trademark employed within the forum state by a resident of that state, is not enough to conclude that personal jurisdiction is proper.

/ / /

The Court stated, 453 F.3d at 1156:

> We conclude that Caddy's actions were not expressly aimed at California. The only acts identified by Pebble Beach as being directed at California are the website and the use of the name "Pebble Beach" in the domain name. These acts were not aimed at California and, regardless of foreseeable effect, are insufficient to establish jurisdiction.
>
> In support of its contention that Caddy has expressly aimed conduct at California, Pebble Beach identifies a list of cases where we have found that a defendant's actions have been expressly aimed at the forum state sufficient to establish jurisdiction over the defendant. Pebble Beach asserts that these cases show that Caddy's website and domain name, coupled by his knowledge of the golf resort as a result of his working in California, are sufficient to satisfy the express aiming standard that it is required to meet. We disagree. If anything, these cases establish that "something more" - the express aiming requirement - has not been met by Pebble Beach.

In the case at bar, Plaintiff's allegations are exactly similar to the allegations in *Pebble Beach*: 1) existence of the allegedly infringing material on a website; 2) imputed knowledge that the Las Vegas Review Journal is located in Nevada and that the infringed material had its source there; and 3) foreseeable harm in Nevada. *Pebble Beach* found these allegations to be insufficient to support express aiming.

In *Brayton Purcell*, the Ninth Circuit made it crystal clear that copied materials posted on a website by a non-resident defendant, that allegedly infringed on the copyright held by the plaintiff in materials posted on plaintiff's own website in the forum district in which the plaintiff resided, would not suffice to confer personal jurisdiction over the non-resident. *Brayton Purcell* was a venue case, but the court analyzed the venue issue under the principle that, pursuant to 28 U.S.C. § 1400(a), venue is proper in "any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Brayton Purcell,* 606 F.3d at 1128. Thus, it examined whether the Northern District of California would have personal jurisdiction over defendants who were residents of the Southern District of California, if those districts were two separate states.

The Court emphatically held that maintenance of a website that allegedly infringed on copyrighted materials whose source was the forum district and in which the copyright holder resided did not satisfy the "express aiming" requirement.  It stated:

> The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum. *See Pebble Beach*, 453 F.3d at 1156. This Court has emphasized that "`something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805, and that "something more" means conduct expressly aimed at the forum, *see Pebble Beach*, 453 F.3d at 1156 ("We now conclude that `something more' is what the Supreme Court described as `express aiming' at the forum state.") (quoting *Bancroft*, 223 F.3d at 1087).
> **It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong**. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We consistently have held that a mere web presence is insufficient to establish personal jurisdiction."); *Pebble Beach*, 453 F.3d at 1158 ("[W]e reject . . . any contention that a passive website constitutes express[ ] aiming."). (emphasis added)

*Brayton Purcell*, 606 F. 3d at 1129.

Although the Court ultimately found that personal jurisdiction in the Northern District would be proper in *Brayton Purcell*, it was only because the defendants made "commercial use of Brayton Purcell's copyrighted material for the purpose of competing with Brayton Purcell for elder abuse clients" within the forum district.  *Brayton Purcell*, 606 F. 3d at 1129.

There is no similar conduct in the case at bar.  The VCDL website in the case at bar is, in all respects pertinent here, a passive website.  None of the defendants used it for commercial purposes to compete for business or clients within Nevada, as in *Brayton Purcell*.  Instead, it was used for educational activities directed principally at VCDL members, none of whom are Nevada residents, and almost all of whom are Virginia residents.

As noted, Mr. Van Cleave did not copy the article from the Las Vegas Review Journal's website.  Van Cleave Decl. ¶ 8.  Instead, as shown by the material posted, and Mr. Van Cleave's Declaration, the link to the article was emailed to him by another individual.  Van Cleave Decl. ¶

8; Cplt. Ex. 2, p. 13 of 27.   Similarly, Mr. Snyder did not take any action directed at Nevada with respect to this article and, in fact, did not take any action at all regarding it.   Snyder Decl. ¶ 3. The Complaint alleges no conduct expressly aimed at Nevada by any defendant in this case.   As *Brayton Purcell* and *Pebble Beach* make clear, an alleged infringement by persons outside the forum on a passive website, even though it may involve intellectual property created within, or an intellectual property holder within, the forum, is not sufficient to confer personal jurisdiction. Accordingly, this case must be dismissed.

## II.    THE CASE MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

The Complaint does not state a claim on which relief can be granted as to all defendants, and for additional reasons as to Mr. Snyder.

### A.   <u>The Complaint does not state a claim as to any of the defendants.</u>

First, the Complaint does not indicate that Righthaven has standing to bring this case. Although it alleges that Righthaven is the owner of the copyright to the article, the Complaint states on its face that the article was originally published on or about July 12, 2010, and that the alleged infringement took place on or about July 22, 2010.   However, the registration of the copyright did not occur until September 9, 2010.

As this Court has stated:

> "A plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004), *see Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "[O]nly the owner of an exclusive right under the copyright act is entitled to sue for infringement." *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 889 (9th Cir. 2005). The Ninth Circuit held in *Silvers* that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee only has standing to sue if the interest in the past infringement is expressly included in the assignment and the assignee also owns the actual copyrights. Id. at

890 (aligning the Ninth Circuit with the Second Circuit as expressed in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2nd Cir. 1991)).

*Righthaven LLC v. MajorWager.Com, Inc.* No. 2:10-cv-00484-GMN-LRL (order filed 10/28/10 at 3).

In the case at bar, there is no allegation in the Complaint that Righthaven, as assignee, has standing to sue for an alleged infringement that took place prior to transfer and registration of the copyright.

Second, although the Complaint alleges that Mr. Van Cleave posted an "unauthorized copy" of the article, and states that the Defendants were not granted permission to reproduce the work, the copy of the Las Vegas Review Journal website article appearing as Exhibit 1 to the Complaint, has buttons expressly inviting visitors to the website to "email this," to "save this" (make an electronic copy), and to print it. By inviting readers to email the article, and to copy it electronically, either express or implied permission was given to reproduce it. As noted, Mr. Van Cleave received an emailed link to the article. Van Cleave Decl. ¶ 8. A copyright holder should not be suffered to invite emailing and copying by including buttons on its website to do so, and then sue organizations and individuals who have taken them up on their offer. Certainly, such an invitation negates any allegation of "willful" infringement. Cplt. ¶¶ 40-42.

Third, this alleged infringement by VCDL is protected by the doctrine of fair use. This Court has recently granted a motion to dismiss in a Righthaven case on grounds of fair use. *Righthaven LLC v. Realty One Group, Inc.*, Case No. 2:10-cv-1036-LRH-PAL (order dated October 18, 2010; filed October 19, 2010). In that case, a website blog (as in the instant case) had reproduced part of a Las Vegas Review Journal article. Although the facts in that case were somewhat different from the case at bar, the doctrine of fair use is equally applicable.

///

The doctrine of fair use is codified at 17 U.S.C. §107, which provides, in relevant part:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies...or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

The four factors are not treated in isolation, but must be weighed together. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

Regarding the first factor, it is apparent from the status of VCDL as a non-profit, §501(c)4 organization, and the inclusion of the article as part of a series of materials directed at VCDL members in Virginia, that the use of the material was for non-profit educational purposes relating to the members' concerns as gun owners and those who may legally carry firearms. There is no allegation in the Complaint that the article was ever commercially distributed for profit or gain. In fact, VCDL's non-profit status requires that its net earnings be devoted "exclusively to charitable, educational, or recreational purposes." 26 U.S.C. § 501(c)(4).

In addition, the alleged use by VCDL was transformative. As part of the materials reproduced in Exhibit 2 to the Complaint, two links to the Las Vegas Review Journal website were provided. The first link, to lvrj.com, is a link to the main page of the Las Vegas Review Journal, identifying the source of the article. The second link, a "tinyurl" link, is a compressed link that pointed to the specific article on the Las Vegas Review Journal website. Thus, provision

of these links was transformative, changing the material from not just being a news article, but also acting as a "pointer" to the Las Vegas Review Journal's website, and directing internet traffic there.  *See Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146, 1165-66 (9th Cir. 2007).

The second factor also weighs in favor of a finding of fair use.  The nature of this article was a news report.  As this court noted in the *Realty One* case, the article contained "factual news reporting...which supports [defendant's] fair use of the copyrighted information. *See e.g., Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924 (9th Cir. 2002) (re-publication of a video depicting a news report was a fair use because it was informational rather than creative)." *Realty One* at 3.

It is also significant, and supports fair use, that the news report had already appeared on the internet approximately ten days before the alleged re-posting on vcdl.org.  Works that haven't yet been published are subject to greater protection, but published works are more likely to qualify as fair use because the first public appearance of the expression has already occurred. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 564 (1985).

Regarding the third factor, the allegation in this case is that the entire article was reproduced rather than just a portion.  Although *Realty One* involved only a portion of the article, it was the "news report" portion that was reproduced, and the commentary (that is, the creative portion that would receive greater protection) that was omitted.   The Court therefore appropriately found that reproduction of the news portion was protected by fair use.  Further, as noted above, the website version of the Las Vegas Review Journal article invited readers to copy the entire article by printing or saving it electronically, and also invited readers to "email this." Cplt. Ex. 1.  It should come as no surprise that the entire article was apparently reproduced, and not just a portion.  In addition, the article was short, and it would have made little sense to reproduce only a small portion of it.

The fourth factor also weighs strongly in favor of a finding of fair use. The "potential market for or value of the copyrighted work" would be affected insignificantly, if at all, by the alleged reproduction in this case. This was a topical news story, not a novel, movie, or musical recording that could be expected to have enduring value or generate sales over time. In fact, the chances that there would even be a "market" for this work by itself, after initial publication, are minimal. In addition, the Complaint alleges that the alleged infringement did not occur until ten days after publication. By that time, this news was, for most people, "yesterday's news."

Further, any distribution by VCDL of the article was not for its current news value. It is not in the newspaper business. Instead, VCDL is an educational organization, and the purpose here was clearly to inform members about the dangers that can be faced by those who legally carry concealed firearms, and to present a cautionary example. Any distribution in this fashion would not change the market or value of the article to Righthaven, if any. In fact, it is unclear that Righthaven uses the articles to which it acquires copyrights for any marketable purpose at all, but instead apparently uses those rights simply to bring lawsuits.

Thus, as in *Realty One*, this case should be dismissed because, under the doctrine of fair use, there has been no infringement of copyright by any defendant.

**B.      The Complaint does not allege any infringement by Mr. Snyder individually.**

The Complaint does not state a claim against any of the defendants, including Mr. Snyder, for the reasons discussed above. However, the Complaint also does not state a claim against Mr. Snyder because it fails to describe any act of alleged wrongdoing by him.

As to Mr. Snyder, the Complaint alleges only that he is identified on the Website as the Vice -President of VCDL, and that (in addition to VCDL as an organization) he is identified as a registrant and administrative contact by Tucows for the domain. Cptl. ¶¶ 6, 7. Plainly, an organization must work through its officers and employees. Even assuming (without admitting)

that there was an actionable infringement in this case, that does not make Mr. Snyder, as Vice-President of VCDL and acting as a contact with a domain registrar, personally liable for any such infringement.

There is no allegation that Mr. Snyder participated in any infringing activity; that he was aware of any infringing activity; that it was within his power, ability, and responsibility as a corporate officer to oversee and control the contents of the website; or that he was vicariously liable for the acts of another.  It is unnecessary to go through any and all legal theories under which liability might be asserted against a corporate officer, because the Complaint alleges neither a legal theory nor any facts whatsoever  to hold Mr. Snyder liable.

The only allegation is that "Mr. Snyder has willfully engaged in the copyright infringement of the work," without stating any facts to support that conclusory allegation.  The United States Supreme Court has recently held that such allegations consisting of legal conclusions are insufficient to state a claim that will survive a motion to dismiss.  The United States Supreme Court has issued two recent cases holding that allegations consisting of legal conclusions are insufficient to state a claim that will survive a motion to dismiss, and that facts sufficient to support liability must be pled.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

In *Iqbal*, 129 S.Ct. at 1949, the Court affirmed a dismissal for failure to state a claim, holding that:

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (citing *Twombley*).

The Court noted that: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950.  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (citations to *Twombley* omitted).

Regarding Mr. Snyder, the Complaint alleges only the legal conclusion that he "willfully engaged in the copyright infringement of the work," without any facts to support that conclusion. Such an allegation does not state a claim as to which relief can be granted, under the standards enunciated in *Twombley* and *Iqbar*.

## CONCLUSION

For the foregoing reasons, the Complaint must be dismissed for lack of personal jurisdiction and failure to state a claim on which relief can be granted.

DATED:  November 19, 2010.

Respectfully submitted,


/s/ Robert DeLong
Richard E. Gardiner (Pro Hac Vice to be submitted)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice to be submitted)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel:  (775) 323-1601
Fax:  (775) 348-7250
Email:  rdelong@parsonsbehle.com

Attorneys for Defendants

PARSONS
BEHLE &
LATIMER

4845-9396-6344.1

- 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Parsons Behle & Latimer, and that on the 19th

day of November, 2010, I filed a true and correct copy of the foregoing DEFENDANTS'

MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. RULES 12 (b)(2) and 12(b)(6) with the

Clerk of the Court using the Court's CM/ECF system, which sent electronic notification to all

registered users as follows:

    J. Charles Coons, Esq.
    Joseph C. Chu, Esq.
    Righthaven LLC
    9960 W. Cheyenne Avenue, Suite 210
    Las Vegas, Nevada 89129

                                        /s/  Tracy L. Brown
                                        Employee of Parsons Behle & Latimer

4845-9396-6344.1