Richard E. Gardiner (Pro Hac Vice)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel:  (775) 323-1601
Fax:  (775) 348-7250
Email:  rdelong@parsonsbehle.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, | Case No.  2:10-cv-01683-GMN-PAL |
| Plaintiff, | |
| v. | |
| VIRGINIA CITIZENS DEFENSE LEAGUE, INC., *et al.,* | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants Virginia Citizens Defense League, Inc. ("VCDL"), Philip Van Cleave, and

Jim Snyder, by and through their undersigned counsel, hereby move this honorable Court

pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(h)(3) to dismiss the Complaint filed against

them by Plaintiff Righthaven LLC ("Righthaven").  The case must be dismissed as to all Defendants due to Righthaven's lack of standing and the consequent lack of subject matter jurisdiction in this Court.  The reasons in support of this motion are set forth in the following Statement of Points and Authorities in Support of Defendants' Motion to Dismiss.

<u>STATEMENT OF POINTS AND AUTHORITIES</u>
<u>IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Righthaven has represented to this Court that it holds the exclusive rights to a newspaper article published on July 12, 2010, by the Las Vegas Review Journal ("LVRJ"), which is owned by Stephens Media LLC ("Stephens Media").  Righthaven claimed in its Complaint and in a brief previously filed in this case to have obtained the exclusive rights to that article by an assignment from Stephens Media.  A Strategic Alliance Agreement ("SAA") between Righthaven and Stephens Media, unsealed by Chief Judge Hunt in another Righthaven case by Order dated April 14, 2011, demonstrates conclusively that those statements were false, that Righthaven did not possess such exclusive rights, and that it therefore did not have standing to sue for infringement of such rights.  The belated attempt by Righthaven and Stephens Media to paper over this fundamental defect by creating an ostensibly retroactive amendment to the SAA is unavailing, and has been rejected in at least three Righthaven cases decided by judges of this court.  This case must therefore be dismissed for lack of subject matter jurisdiction.

<u>FACTUAL AND LEGAL BACKGROUND</u>

This lawsuit was filed on September 28, 2010, by Righthaven against Defendant Virginia Citizens Defense League, a Virginia not-for-profit charitable and educational organization.  ECF No. 1.  Philip Van Cleave and Jim Snyder, the President and Vice-President of VCDL, were also sued individually.  *Id.*  The Certificate of Interested Parties filed by Righthaven identified only three entities (Righthaven LLC, SI Content Monitor LLC, and Net Sortie Systems LLC) as

having a pecuniary interest in the outcome of the case.  ECF No. 6.   The Certificate did not list Stephens Media LLC as having a pecuniary interest in the case.

The central contention in the Complaint was that a copy of a news article (the "Work"), originally appearing in the LVRJ, had been posted (with a link to the LVRJ website) on the VCDL website.  Righthaven represented to this Court in its Complaint that "Righthaven is the owner of the copyright in and to the work."  Cmplt. ¶¶ 11, 24 (ECF No. 1).[1]  Righthaven further represented to the Court that Righthaven held "the exclusive right to reproduce the Work" under the copyright statutes; that it held "the exclusive right to prepare derivative works based on the Work"; that it held "the exclusive right to distribute copies of the Work"; and that it held "the exclusive right to publicly display the Work."  Cmplt. ¶¶ 32-35 (ECF No. 1).  The gravamen of Righthaven's Complaint was that the Defendants had reproduced, created an unauthorized derivative, and distributed and publicly displayed an unauthorized reproduction of the Work "in derogation of *Righthaven's exclusive rights*" under specific subsections of 17 U.S.C. § 106.  Cmplt. ¶¶ 36-39 (ECF No. 1) (emphasis added).

By Order dated April 14, 2011, Chief Judge Hunt unsealed the SAA between Stephens Media and Righthaven dated January 18, 2010.  *See Righthaven LLC v. Democratic Underground LLC,* No. 2:10-cv-01356, DU ECF No. 93 (unsealing documents previously filed as DU ECF Nos. 74, 79).[2]  Judge Hunt noted the importance of the SAA to other defendants in his Order unsealing it, stating that "The right of other defendants in Righthaven's lawsuits, and of the public to understand the full facts regarding the bases for Righthaven and Stephens Media's actions, outweighs the feeble concerns [raised by Righthaven]."  Order, DU ECF No. 93, at 5.  Defendants

---

[1] Later in this litigation, Righthaven continued to represent to the Court and parties that it "owned," is the "owner" of, and has "copyright ownership" of the Work.  *See, e.g.,* Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 13, at 2, 3, 8, 10, 22, 23, and 24.

[2] Defendants will refer to documents filed in the *Democratic Underground* case in the form "DU ECF No.____." The SAA is DU ECF No. 79-1.

PARSONS
BEHLE &
LATIMER

have attached a true and correct copy of the SAA as Exhibit A to the Declaration of Dan M. Peterson ("Peterson Declaration") submitted herewith.[3]

The SAA provided for a form of copyright assignment to be used in all cases in which Stephens Media "assigned" a copyright to a particular work to Righthaven.  SAA §§ 3.1, 7.1; *see also* Exhibit 1 to SAA ("Copyright Assignment").  SAA at 16. However, as discussed below, the SAA provided that, despite the execution of any particularized assignment, Stephens Media retained an exclusive license to exploit the copyrights, that Righthaven had no right to exploit the copyrights, and that Righthaven had no right to the proceeds from exploitation of the assigned copyrights, except for a portion of any recoveries arising from litigation.

Specifically, Section 7.2 of the SAA provided:

> 7.2 Despite any such Copyright Assignment, Stephens Media shall retain (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery.  To the extent that Right*haven*'s maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. . . .

Righthaven has the right under the SAA to receive 50% of such litigation proceeds.  SAA

---

[3] Defendants request that the Court take judicial notice of Exhibits A and B attached to the Peterson Declaration.  The court may take judicial notice of these documents because their authenticity is not reasonably in dispute.  Fed. Rule Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may...take judicial notice...of its own records and files, and facts which are part of its public records.....Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.") (internal citations omitted); *Scott v. Stansbury*, 2:10cv61, 2010 WL 5769521 (E.D. Va. Dec. 16, 2010) ("[T]he Court takes judicial notice of its own file in the related criminal action"), report and recommendation adopted, 2:10cv61, 2011 WL 465264 (E.D. Va. Feb. 3, 2011), *aff'd*, 11-6282, 2011 WL 1575486 (4th Cir. Apr. 27, 2011).

§ 5. Stephens Media also has a pecuniary interest in the litigation proceeds, with the right to receive the other 50% of such proceeds after certain deductions.  SAA § 5.  Stephens Media also retained a right to terminate the "assignment" at any time on short notice, and the right to determine that a lawsuit should not be instituted.  SAA §§ 3.3, 8.  These specific provisions of the SAA are quoted and discussed in Part I.A.3., below.

On May 9, 2011, Righthaven filed its Response in the *Democratic Underground* case to this newly revealed evidence.   DU ECF No. 100.   Accompanying that Response was a Declaration by Steven A. Gibson, Chief Executive Officer of Righthaven ("Gibson Declaration"). Attached to the Gibson Declaration was a document styled "Clarification and Amendment to Strategic Alliance Agreement" ("Amendment").   DU ECF No. 102, Ex. 3.  As further discussed below, the Amendment purported to change the terms of the SAA and of all assignments by Stephens Media to Righthaven retroactively to January 18, 2010.[4]

On June 14, 2011, Chief Judge Hunt issued his Order dismissing the *Democratic Underground* case due to Righthaven's lack of standing. DU ECF No. 116.  He stated his belief that "Righthaven has made multiple inaccurate and likely dishonest statements to the Court."  *Id*. at 15.  Focusing specifically on Righthaven's failure "to disclose Stephens Media as an interested party in any of its approximately 200 cases filed in this District," Judge Hunt ordered "Righthaven to show cause, in writing, no later than two (2) weeks from the date of this order, why it should not be sanctioned for this flagrant misrepresentation to the Court."  *Id.*

On June 19, 2011, Righthaven filed an Amended Certificate of Interested Parties in the instant case, ECF No. 25, citing Judge Hunt's decision in the *Democratic Underground* case, "but without any admission that the previously filed Certificate of Interested Parties intentionally

---

[4] A true and correct copy of the Amendment is attached as Exhibit B to the Peterson Declaration submitted herewith.

failed to comply with, or otherwise disregard LR 7.1-1."

On June 20, 2011, Judge Pro dismissed a Righthaven copyright case against an individual for posting an entire LVRJ editorial.  *Righthaven LLC v. Hoehn*, 2:11-cv -00050-PMP-RJJ, ECF No. 28.  The Complaint was dismissed for lack of standing (subject matter jurisdiction) and under the doctrine of fair use.

On June 22, 2011, Judge Hunt dismissed Righthaven's Complaint for lack of subject matter jurisdiction in the case of *Righthaven LLC v. DiBiase*, 2:10-cv-01343-RLH–PAL, and directed the Clerk to close the case.  ECF No. 72.

In the instant case, this Court denied Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on June 23, 2011, and specifically directed the parties' attention to Judge Hunt's dismissal for lack of subject matter jurisdiction in the *Democratic Underground* case.  ECF No. 26.

On June 28, 2011, Judge Hicks issued an Order in ten Righthaven cases pending before him, ordering Righthaven to show cause within ten days why those cases should not be dismissed for lack of subject matter jurisdiction.  *Righthaven, LLC v. Smith,* 2:10-cv-01031-LRH-LRL*; Righthaven, LLC v. South Coast Partners, Inc.,* 2:10-cv-01062-LRH-LRL*; Righthaven, LLC v. Chris Brown Web Network,* 2:10-cv-01399-LRH-PAL*; Righthaven, LLC v. Hush-Hush Entertainment, Inc.,* 2:10-cv-01404-LRH-LRL*; Righthaven, LLC v. Wehategringos.com,* 2:10-cv-01457-LRH-GWF*; Righthaven, LLC v. Coker,* 2:10-cv-02248-LRH-GWF*;  Righthaven, LLC v. Gunner's Alley, LLC,* 2:11-cv-00719-LRH-RJJ*;  Righthaven, LLC v. Computer Services One LLC,  2*:11-cv-00721-LRH-PAL;   *Righthaven, LLC v. Kirk,*  2:11-cv-00722-LRH-PAL*; Righthaven, LLC v. Sieber,* 2:11-cv-00729-LRH-GWF.  Judge Hicks noted that "the pleadings and other papers on file reveal that the standing issues are likely identical to the standing issues

determined adversely to Righthaven in *Democratic Underground* and *Hoehn*." *See, e.g.,*

*Righthaven LLC v. Bob Sieber*, 2:11-cv-00729-LRH-GWF, for a copy of Judge Hicks's order.

Defendants are aware of at least one case in which Judge Mahan has also issued an order

to show cause why Righthaven's Complaint should not be dismissed for lack of subject matter

jurisdiction. *Righthaven LLC v. Pahrump Life*, 2:10-cv-01575-JCM-PAL, ECF No. 20.


## ARGUMENT

**I.**  **RIGHTHAVEN LACKS STATUTORY STANDING TO SUE, AND THIS CASE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

   **A.**  **Righthaven lacks standing to sue under the Copyright Act.**

     ***1. Standard of review.***

As the Ninth Circuit has recently stated:

> "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks omitted); *accord United States v. Hays*, 515 U.S. 737, 742 (1995). The existence of Article III standing is not subject to waiver. *Hays*, 515 U.S. at 742. It must be demonstrated "at the successive stages of the litigation," *Lujan [v. Defenders of Wildlife]*, 504 U.S. [555] at 561 [(1992], and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3).

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d. 939, 954 (9th Cir. 2011).  "[T]he jurisdictional

issue of standing can be raised at any time, including by the court *sua sponte*." *United States v.*

*Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997).  Although the Defendants are the moving party

under Rule 12(b)(1), Righthaven as the "party asserting federal jurisdiction bears the burden of

proving the case is properly in federal court." *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957

(9th Cir. 2001).

In the *Democratic Underground* case, Judge Hunt noted that challenges to subject matter

jurisdiction can be of two types:

> Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either

facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *Whitethorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1095–96 (D. Nev. 2002) (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage*, 343 F.3d at 1039 n. 2). [5]

### 2. *Governing copyright law.*

Copyright law "is a creature of statute, and the only rights that exist under copyright law are those granted by statute." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 883-84 (9th Cir.2005) (en banc). Section 501(b) of Title 17 creates the statutory right of action for copyright infringement. It provides that: "The legal or beneficial owner of an *exclusive right* under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." (emphasis added). A person or entity that does not possess such an exclusive right has no standing to institute legal action. As the Ninth Circuit has stated, "only owners of an exclusive right in a copyright may sue." *Silvers*, 402 F.3d at 887.

---

[5] To date, Righthaven has not submitted a copy of the SAA, the Amendment, or the assignment in this case. Indeed, Righthaven went to considerable lengths in its brief filed on December 13, 2010, to disclaim any necessity of submitting the "Righthaven Assignment" in connection with a different issue in this case. Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 13, at 23.

The Ninth Circuit and other federal courts have held on multiple occasions that only the owner of an *exclusive* right can sue for infringement, and one who holds only a *bare* right to sue without an exclusive right has no standing to bring suit.  In *Silvers*, the plaintiff was the original author of the work alleged to have been infringed, but was not the owner under the copyright of any exclusive rights listed in § 106.  The copyright owner assigned to her "all right, title and interest in and to any claims and causes of action against" various third parties for infringement.  *Id.*  The Ninth Circuit noted that "*the right to sue for an accrued claim for infringement* is *not* an exclusive right under § 106." *Id.* at 884 (emphasis added).  Though exclusive rights under § 106 may be transferred to another party pursuant to § 201(d) of the Copyright Act, the Court observed that "§ 201(d) creates no exclusive rights other than those listed in § 106, nor does it create an exception to § 501(b)."  *Id.* at 885.  Thus, the Court held that Silvers lacked standing to sue, because she did not hold any of the exclusive rights under § 106, and "only owners of an exclusive right in a copyright may sue." *Id.* at 887.

In reaching this result, the Ninth Circuit followed the reasoning of the Second Circuit decision in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf"), and *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 n.3 (2d Cir. 1982) ("authorization by the copyright holder of suit by a person other than an exclusive licensee" does not confer standing; "[w]e do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf.").

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003), held that if the elements of § 501(b) are not satisfied, there is no standing and the case must be dismissed on a Rule 12 motion.  Under "Standing," the Court began its analysis as follows:

> Under the Copyright Act of 1976 (the "Act"), "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled

> ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). MTM argues that the works Warren composed were "works made for hire," and Warren is therefore not the legal owner and thus lacks standing.

*Id.* at 1140.  The Ninth Circuit noted that:

> It is appropriate to address the question of standing in deciding a motion to dismiss because "[t]he elements of standing are 'an indispensable part of the plaintiff's case,' and accordingly must be supported at each stage of litigation in the same manner as any other essential element of the case." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Further, if Warren lacks standing to assert his federal copyright claims, the district court did not have subject matter jurisdiction and dismissal was appropriate (citations omitted).

*Id.*  After analyzing the contracts between the parties in that case, the Ninth Circuit concluded that the plaintiff retained "no rights of authorship and lacks standing to sue for infringement as a legal owner of the copyrights."  *Id.* at 1143.

This principle was underlined in *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216 (9th Cir. 2010).  In that case, the plaintiff misleadingly submitted a settlement to the court, "purportedly recognizing [plaintiff] as the co-owner of the copyright…."  *Id.* at 1222.  However, "the agreement only applied 'ownership' to a split of an anticipated recovery in this litigation."  *Id.*  Thus, the plaintiff's attorney "misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize co-ownership" of the work.  *Id.*  The Ninth Circuit upheld a sanction of more than $250,000 against the plaintiff's attorney for his "bad faith pursuit of a frivolous copyright infringement claim."  *Id.* at 1216.

*See also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) (because plaintiff did not hold exclusive right in the copyright, it was not entitled to sue); *Nafal v. Carter*,

540 F.Supp.2d 1128, 1142 (C.D. Cal. 2007) (where "Plaintiff has in effect been assigned the right to file this lawsuit," its ability to do so "has been barred by the *Silvers* Court.").

### 3. Effect of the SAA.

The exclusive rights that an individual or entity may own in a copyright are set forth in 17 U.S.C. § 106.  The Complaint represented that Righthaven held "the exclusive right to reproduce the Work," "the exclusive right to prepare derivative works based on the Work," "the exclusive right to distribute copies of the Work," and "the exclusive right to publicly display the Work." Cmplt. ¶¶ 32-35.  The SAA shows indisputably that those statements were false.

The SAA sets up a comprehensive system in which Righthaven identifies alleged infringements of Stephens Media materials, Stephens Media assigns copyrights to Righthaven, and Righthaven files suit.  For each separate copyright, and "throughout the Term," the SAA makes it mandatory that "Stephens Media *shall* effect the assignments to Righthaven as *required by this Agreement . . . by executing a particularized assignment*" that is "consistent with (and *in form and substance the same as*) the scope of assignment as set forth in the form of copyright assignment as embodied in Exhibit 1 (each a "Copyright Assignment")."  SAA § 7.1 (emphasis added).

Because the SAA mandates that each Copyright Assignment be in form and substance the same as Exhibit 1 to the SAA, there is a presumption that the terms of the SAA were followed in executing the assignment in the instant case.  "Absent evidence to the contrary, the applicable presumption is that the ordinary course of business was followed . . . ."  *United States v. 313.34 Acres of Land*, 923 F.2d 698, 703 (9th Cir. 1991) (quoting *United States v. State of Washington*, 233 F.2d 811, 816 (9th Cir. 1956)).[6]   Righthaven has asserted that the assignments in at least five

---

[6] *See also First National Bank of Portland v. Dudley*, 231 F.2d 396, 400 (9th Cir. 1956) ("There is no suggestion that the ordinary course of business was not followed, so the presumption is that all proceeds from sales of inventory

cases in this Court are identical except for the name of the work at issue.  Gibson Declaration, DU ECF No. 102, at 3.  Except for the name of the work, the assignments in several other Righthaven cases also contain the same language as in the *Democratic Underground* case.  *Righthaven LLC v. Hoehn*, 2:11-cv-00050-PMP-RJJ, ECF No. 24; *Righthaven, LLC v. Vote for the Worst LLC*, 2:10-cv-01045-KJD–GWF, ECF No. 41; *Righthaven LLC v. Pahrump Life*, Case No. 2:10-cv-01575-JCM-PAL, ECF No. 26.[7]  Most importantly, even if the assignment in the instant case somehow conveyed different rights, the SAA by its terms governs all such assignments, and expressly overrides them.  Despite whatever the assignment might say, the SAA provides that the exclusive rights to exploit the copyright remain with Stephens Media.[8]

The SAA states at § 7.2:  "*Despite any such Copyright Assignment*, Stephens Media shall *retain*…an *exclusive* license to Exploit [the copyrights] for any lawful purpose whatsoever, and *Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation* [of the copyrights] other than the *right to proceeds in association with a Recovery.*"[9]  SAA § 7.2 (emphasis added). It goes on to state that to the extent that litigation by Righthaven could be deemed to diminish Stephens Media's rights to exploit the copyrights,

---

were, as before, deposited in appellant bank."); *Albert Miller & Co. v. Corte*, 107 F.2d 432, 437 (5th Cir. 1939) ("the presumption is . . . that parties perform according to their contracts . . . .").

[7] In *Righthaven LLC v. DiBiase*, 2:10-cv-01343-RLH–PAL, ECF No. 57, Righthaven simply filed the Gibson Declaration from the *Democratic Underground* case in response to Plaintiff's Motion to Dismiss.  *See* Declaration of Shawn Mangano Esq., ECF No. 58, in the *DiBiase* case.  Mr. Mangano stated:  "While the contents of these declarations describe the specific copyrighted work at issue in that case and the related assignment of same, *these statements are equally applicable to this action* in that *the Assignment is substantively identical* to that in *Democratic Underground.* Righthaven has referenced these prior filed assignments in order to simply its filing and to reduce any burden on the Court." (emphasis added).  Attached to the Mangano Declaration was a copy of the specific assignment applicable to the *DiBiase* case which, once again, was identical to the assignments in the other cited Righthaven cases, apart from the name of the work.

[8] The fact that the language of the assignments are required to be the same by the SAA, and the fact that the SAA actually governs which rights are assigned and which rights are retained by Stephens Media prompted Judge Hunt to observe in *Democratic Underground* that he considered "the SAA highly relevant to Righthaven's standing in this and a multitude of other pending Righthaven cases."  Order, DU ECF No. 116, at 3.

[9] "Recovery" is defined to include sums received by Righthaven and/or Stephens Media as the result of infringement actions or a settlement of an infringement case.  SAA at 14.

"Righthaven hereby grants an *exclusive* license to Stephens Media *to the greatest extent permitted by law* so that Stephens Media shall have *unfettered and exclusive ability to Exploit* [the copyrights]." *Id.* (emphasis added).

In other words, the SAA, *despite* what may be said in any particularized assignment of an individual copyright, provides that all rights under the copyright are retained *exclusively* by Stephens Media, except for the naked right by Righthaven to institute litigation and to share in litigation proceeds. No matter what language was contained in the assignment, under the SAA Righthaven plainly and emphatically did not hold the "the exclusive right to reproduce the Work," "the exclusive right to prepare derivative works based on the Work," "the exclusive right to distribute copies of the Work," or "the exclusive right to publicly display the Work," as it claimed in its Complaint.

Indeed, even Righthaven's alleged right to sue was subject to veto by Stephens Media. Section 3.3 of the SAA allowed Stephens Media to direct Righthaven not to sue for a putative copyright infringement, provided a laundry list of reasons for which Stephens Media could block a suit, and concluded with the catch-all reason that a suit against a particular party "would result in an adverse result to Stephens Media." SAA § 3.3. Stephens Media also could terminate the "assignment" to Righthaven "at any time" on thirty days' notice, and "enjoy a right of complete reversion." SAA § 8.

In the *Democratic Underground* case, Judge Hunt concisely described the effect of the SAA: "The plain and simple effect of this section [7.2] was to prevent Righthaven from obtaining, having, or otherwise exercising any right other than the mere right to sue as Stephens Media retained all other rights." Order, DU ECF No. 116, at 5.

Judge Hunt further analyzed the effect of the SAA on the purported assignment:

> Prior to the Assignment, Stephens Media possessed all of the
> exclusive rights to the Work and, therefore, the right to sue.

> Because the SAA limited the language of the Assignment, the Assignment changed nothing save for Righthaven's claim to have the right to sue. The companies' current attempt to reinterpret the plain language of their agreement changes nothing. In reality, Righthaven actually left the transaction with nothing more than a fabrication since a copyright owner cannot assign a bare right to sue after Silvers.

*Id.* at 6.  According to Judge Hunt, the SAA was "not ambiguous," and "Righthaven and Stephens Media went to great lengths in the SAA to be sure that Righthaven did not obtain any rights other than the bare right to sue." *Id.* at 6-7.  In fact, Judge Hunt characterized Righthaven's assertion that the SAA did not limit the purported assignment as "flagrantly false—to the point that the claim is disingenuous, if not outright deceitful." *Id.* at 6.

After analyzing the SAA in the *Hoehn* case, Judge Pro also found that "in the end, Righthaven is not left with ownership of any exclusive rights." *Hoehn*, ECF No. 28, at 8.  The provisions of the SAA "deprive Righthaven of any of the rights normally associated with ownership of an exclusive right necessary to bring suit for copyright infringement and leave Righthaven no rights except to pursue infringement actions, a right which itself is subject to Stephens Media's veto." *Id.*

Because, as these cases found, Righthaven possessed none of the exclusive rights under the copyright, it plainly lacks statutory standing to sue under 17 U.S.C. § 501(b).

As of this writing, judges of this District have now held in three decisions that Righthaven lacks standing because of the SAA, and that lawsuits brought by Righthaven for alleged infringement of materials appearing in the LVRJ must be dismissed.  *Righthaven LLC v. Democratic Underground LLC,* No. 2:10-cv-01356; *Righthaven LLC v. Hoehn,* Case No. 2:11-cv-00050-PMP-RJJ; *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343-RLH-PAL.[10]  The

---

[10] As noted in the "Factual and Legal Background" above, two other judges have issued orders to show cause why Righthaven cases should not be dismissed for lack of subject matter jurisdiction, due to the disclosure of the SAA.

SAA controls the instant case as well, as it controls (at the very least) all assignments made after January 2010 and before the Amendment dated May 9, 2011. The same result should be reached in this case as in the other cases already decided on standing grounds by the judges of this District.

**B.    The Amendment to the SAA is unavailing.**

Righthaven's attempt to amend the SAA retroactively does not confer subject matter jurisdiction on this court. *See* Amendment, Exhibit B to Peterson Declaration, filed herewith. In his dismissal Order in the *Democratic Underground* case, Judge Hunt firmly rejected that attempt, holding that:

> [T]his amendment cannot create standing because "'[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*). Although a court may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves. *Newman-Green*, 490 U.S. at 830.

Order, DU ECF No. 116, at 7. In so holding, the Court repudiated the attempt by Righthaven and Stephens Media "to impermissibly amend the facts to manufacture standing," and concluded that "the Court shall not consider the amended language of the SAA, but the actual transaction that took place as of the time the complaint was filed." *Id.* at 8.

Specifically in the context of intellectual property litigation, courts have held that a purportedly retroactive assignment of rights after litigation has been commenced will not cure a lack of subject matter jurisdiction that existed when the complaint was filed. *See, e.g., Benchmark Homes, Inc. v. Legacy Home Builders LLC*, 2006 WL 208830, at 5-6 (D. Neb. Jan. 26, 2006) (retroactive assignment of copyright could not supply standing when plaintiff lacked exclusive rights under § 106 at time suit was filed); *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996) (case must be dismissed if party lacked

ownership of a patent and trademark when litigation was commenced, but thereafter received a *nunc pro tunc* assignment); *Enzo Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092-94 (Fed. Cir. 1998) (plaintiff who held only a non-exclusive license to patent at time of complaint, and thus lacked standing, could not thereafter obtain standing by receipt of ostensibly retroactive license sufficient to make it a virtual assignee); *see also Procter & Gamble Co. v. Paragon Trade Brands, Inc.,* 917 F.Supp. 305, 310 (D.Del.1995).

Indeed, the Second Circuit—one of the most prestigious and active courts in the country with respect to copyright issues—has recently held that licenses and assignments of copyrights can only be given effect prospectively, not retroactively. *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007). The Court noted that some cases have "involved retroactive licenses granted pursuant to negotiated settlements of accrued infringement claims," *id.* at 101, but recognized that, in essence, those are merely settlements to extinguish a claim of infringement in the past, and are not true licenses. The Court stated that "Licenses and assignments, however, are prospective; they permit use by a non-owner who would not otherwise have a right to use the property." *Id.* at 103. Among the "strong" reasons for disfavoring retroactive transfers are "the need for predictability and certainty." *Id.* at 105. The Court concluded, unequivocally: "[W]e hold that a license or assignment in copyright can only act prospectively." *Id.* at 104.

Thus, at least one well-reasoned and authoritative opinion indicates that retroactive assignments and licenses of copyrights are not permitted at all. But even apart from *Davis*, the case law clearly establishes that standing is determined as of the time the complaint is filed; that attempts to change the facts retroactively to confer standing are unavailing; and that this is specifically true in copyright and other intellectual property cases. The Amendment accordingly cannot be given retroactive effect, as Judge Hunt held in *Democratic Underground* and *DiBiase*.

Even if the Amendment should somehow be given retroactive effect, it still does not cure Righthaven's lack of standing under the Copyright Act.  After analyzing the Amendment, Judge Pro in the *Hoehn* case concluded that the Amendment "does not provide Righthaven with any exclusive rights necessary to bring suit."  *Hoehn*, ECF No. 28, at 10.  As Judge Pro succinctly summarized the effect of that Amendment:

> The May 9, 2011 Clarification provides Righthaven with only an illusory right to exploit or profit from the Work, requiring 30 days advance notice to Stephens Media before being able to exploit the Work for any purpose other than bringing an infringement action. Stephens Media has, in its sole discretion, the option to repurchase the Copyright Assignment for a nominal amount within 14 days, thereby retaining the ability to prevent Righthaven from ever exploiting or reproducing the Work. Stephens Media's power to prevent Righthaven from exploiting the Work for any purpose other than pursuing infringement actions is further bolstered by the Clarification's provision that every exploitation of the Work by Righthaven other than pursuing an infringement action without first giving Stephens Media notice constitutes irreparable harm to Stephens Media. Stephens Media may obtain injunctive relief against Righthaven to prevent such "irreparable harm" and, pursuant to the Clarification, Righthaven has no right to oppose Stephens Media's request for injunctive relief. Accordingly, Righthaven does not have any exclusive rights in the Work and thus does not have standing to bring an infringement action.

*Id.*

In *Nafal v. Carter*, 540 F.Supp.2d 1128, 1141-42 (C.D. Cal. 2007), the Court affirmed that "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." (*quoting Althin CD Med., Inc. v. W. Suburban Kidney Ctr., S.C.*, 874 F.Supp. 837, 843 (N.D.Ill.1994)).  As in *Nafal*, the existence of continued veto rights by Stephens Media over infringement litigation (*see* SAA § 3.3), the severe restrictions on any ability by Righthaven to exploit the Work, and Stephens Media's right to cancel or repurchase the assignment at its whim show that Righthaven did not possess exclusive rights.

## II.  RIGHTHAVEN LACKS ARTICLE III STANDING TO SUE.

Righthaven's lack of standing to sue under the Copyright Act is evident from the language of the SAA, the copyright statute, and relevant case law.  Nevertheless, it is worth noting that Righthaven also lacks standing under Article III.  U.S. Const. Art. III.[11]

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The test for Article III standing was summarized by the Supreme Court in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998):

> First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" . . . Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. . . . And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. (Citations omitted.)

The central element necessary for Article III standing is therefore an "injury in fact"—an actual or imminent harm.  The other elements of standing are all defined in relation to this actual injury or harm.

But the SAA makes it abundantly clear that Righthaven suffered no injury or harm from the alleged infringement.  Righthaven alleged that it was injured because of infringements of its exclusive rights to reproduce, to prepare derivative works, to distribute copies, and to publicly display the Work.  Cmplt. ¶¶ 32-35 (ECF No. 1).  But it did not hold any of those exclusive rights.  *See* Part I.A.3, above.  They were held by Stephens Media.  Thus, any infringements on those rights could not possibly harm or injure Righthaven.

---

[11]   The inquiry as to whether a plaintiff has Article III constitutional standing is distinct from whether a plaintiff has non-constitutional standing; that is, "whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit."  *Nuclear Information and Resource Serv. v. Nuclear Reg. Com'n.*, 457 F.3d 941, 949-50 (9th Cir. 2006).

Apart from Righthaven's lack of ownership of any exclusive rights, the SAA expressly provided that Righthaven shall have "*no right or license to Exploit or participate in the receipt of royalties from the Exploitation* [of the copyrights] other than the *right to proceeds in association with a Recovery. . . .* SAA § 7.2.  The term "exploit" was defined in the SAA to mean "to use, make, sell, or otherwise exploit in any manner whatsoever (through any means now known or hereafter Developed)."  SAA at 13.  Because Righthaven had no right to receive any royalties from the copyrighted work, and it had no right to use the work in any way to generate income, any alleged infringement could not result in financial injury to Righthaven.  Indeed, the only circumstance under which Righthaven could recover monies was if an alleged infringement occurred.   Righthaven is not harmed by an alleged infringement, but benefited by it.  Accordingly, there is no injury or harm to Righthaven cognizable under Article III from any alleged infringement, and it lacks constitutional standing to sue.

## CONCLUSION

For the foregoing reasons, the Complaint must be dismissed for lack of standing and subject matter jurisdiction.

DATED:  June 30, 2011.

Respectfully submitted,

/s/ Dan M. Peterson
Richard E. Gardiner (Pro Hac Vice)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

1                                                           -and-

2                                                           PARSONS, BEHLE & LATIMER

Robert W. DeLong, NV Bar No. 10022

50 W. Liberty Street, Suite 700

Reno, Nevada 89501

Tel:  (775) 323-1601

Fax:  (775) 348-7250

Email:  rdelong@parsonsbehle.com

Attorneys for Defendants

4853-0909-4920.1

PARSONS
BEHLE &
LATIMER

1

2

## CERTIFICATE OF SERVICE

3

I hereby certify that on the 30th day of June, 2011, I filed a true and correct copy of the

4

foregoing DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER

5

JURISDICTION with the Clerk of the Court using the Court's CM/ECF system, which sent

6

electronic notification to all registered users as follows:

7

8       J. Charles Coons, Esq.
        Joseph C. Chu, Esq.
9       Righthaven LLC
        9960 W. Cheyenne Avenue, Suite 210
10      Las Vegas, Nevada 89129

11      Shawn A. Mangano
        Shawn A. Mangano, Ltd
12      9960 West Cheyenne Avenue
        Suite 170
13      Las Vegas, NV 89129

14                                                    /s/ Dan M. Peterson
                                                      Dan M. Peterson
15

16

17

18

19

20

21

22

23

24

25

26

27

28