SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>VIRGINIA CITIZENS DEFENSE LEAGUE, INC., a Virginia domestic corporation; PHILIP VAN CLEAVE, an individual; and JIM SNYDER, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01683-GMN-PAL<br><br>**PLAINTIFF RIGHTHAVEN LLC'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Righthaven LLC ("Righthaven") hereby responds to Defendants Virginia Citizens Defense League, Inc. ("VCDL"), Philip Van Cleave ("Mr. Van Cleave"), and Jim Snyder's ("Mr. Snyder"; collectively referred to herein with VCDL and Mr. Van Cleave as the "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 27, the "Motion).

Righthaven's response is based upon the below memorandum of points and authorities, the declaration of Steven A. Gibson (the "Gibson Decl.") and the declaration of Mark A. Hinueber (the "Hinueber Decl."), both of which were originally filed in, among other actions, *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-1066-KJD-GWF ("*Vote*

1

*For The Worst*")(Doc. ## 41-42) that have been resubmitted with this filing, the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), the pleadings and papers on file in this action, any permitted oral argument, and any other matter of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Righthaven has been the recipient of several adverse standing decisions in this District, of which the Court is unquestionably aware. In fact, this Court's June 23, 2011 Order (the "June 23rd Order"), which denied Defendants' first attempt at dismissing this action on, among other grounds, a lack of standing, expressly acknowledged Judge Hunt's adverse standing decision in *Righthaven LLC v. Democratic Underground, LLC,* 2011 WL 2378186, at *6 (D. Nev. June 20, 2011) ("*Democratic Underground*"). (Doc. 26 at 13 n.2.) The *Democratic Underground* decision dismissed Righthaven's copyright infringement action without prejudice based on application of the assignment of ownership and related rights in view of a certain Strategic Alliance Agreement (the "SAA") entered into between the company and Stephens Media LLC in early 2010. (Doc. # 116 at 11.) The *Democratic Underground* decision, however, was expressly limited to these facts and did not consider the effect of a subsequent Clarification and Amendment to Strategic License Agreement (the "Clarification") upon Righthaven's standing. (*Id.* at 8 n.1.)

Other decisions from this District have likewise limited their analysis to the SAA standing alone. For instance, Judge Dawson recently entered dismissal without prejudice for lack of standing based solely on the terms of the SAA in *Righthaven LLC v. Mostofi,* Case No. 2:10-cv-1066-KJD-GWF (D. Nev. July 13, 2011) (Doc. # 34 at 7). Judge Pro also followed suit in *Righthaven LLC v. Hoehn,* 2011 WL 2441020, at *6 (D. Nev. June 20, 2011)("*Hoehn*"), however this decision also set forth an alternative, and likely advisory opinion, as to certain defects contained in the Clarification.

All of these decisions, which Righthaven respectfully disagrees with, have completely failed to address or substantively analyze a fairly straightforward argument that this Court's June

23rd Order astutely recognized in its standing analysis – whether the assignment of ownership from Stephens Media to Righthaven included the right to pursue accrued infringement claims and whether the alleged infringement in this action constitutes an accrued infringement claim. (Doc. # 26 at 12-13.)  This is precisely the issue presented to the Ninth Circuit in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005)("*Silvers*") – whether a party assigned the bare right to sue for past infringement had requisite standing to maintain suit.  As noted in the June 23rd Order:

> The Ninth Circuit held in *Silvers* that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee only has standing to sue if the interest in the past infringement is expressly included in the assignment and the assignee also holds the actual copyrights. . . .
>
> . . .
>
> Therefore, more information is needed to determine when the infringement occurred and whether the transfer conveyed preexisting claims.  This is critical to whether or not [Righthaven] has standing to pursue the claim.

(Doc. # 26 at 12.)

    If Righthaven construes the foregoing observations by the Court correctly, standing to sue for an accrued past infringement can be maintained by an assignor as long the right to do so is expressly conveyed with a transfer of ownership.  While Righthaven raises several arguments as to why it has standing to maintain this action, one of the most fundamental arguments asserted by it below, and in other actions in this District that have not specifically address the issue, is that the company was assigned ownership in the work at issue along with the right to sue for, among other things, accrued past infringements by Stephens Media.  While the general terms of the SAA causes certain rights to exploit the works to be licensed back to Stephens Media after assignment, the fact remains that Righthaven is conveyed ownership of the work and the right to sue for accrued infringements under the terms of the assignment.  Thus, while the nature of exploitation rights in the work licensed back to Stephens Media may bear upon Righthaven's

standing to sue for present and future infringements, this scenario is not before the Court and is outside the holding of *Silvers*.

While it is unfortunate that prior decisions from this District have failed to address this seemly straightforward analysis, Righthaven is hopeful this Court will do so in a manner consistent with the observations contained in its June 23rd Order. If this is done, Righthaven asserts that Defendants' Motion should be denied. To the extent doubts remain in view of prior decisions from this District, including the *Hoehn* decision's alternative and advisory analysis of the Clarification, Righthaven maintains that such decisions are in error. Finally, Righthaven now introduces an Amended and Restated Strategic Alliance Agreement (the "Restated Amendment") between the company and Stephens Media, which was expressly crafted to address all of the concerns identified by Judge Pro in the *Hoehn* decision.[1] (Mangano Decl. Ex. 1.) Righthaven unquestionably has standing under the Restated Amendment.

In sum, Righthaven believes the Court fully appreciates the holding in *Silvers* and that it has standing under this decision. Righthaven additionally asserts that it has standing despite the license back structure envisioned under the SAA and that any such defects found to exist thereunder have been cured by the Clarification and the Restated Amendment. Accordingly, as argued below, Defendants' standing challenge should be denied once again.

## II.  STATEMENT OF FACTS

Righthaven is the owner of the copyrighted literary work entitled "Slaying of Army veteran shocks friends" (the "Work"), which was originally published on July 12, 2010 by the *Las Vegas Review-Journal* (the "LVRJ"). (Compl. ¶¶ 11, 25, 26, Exs. 1, 3.) The Work clearly identifies the LVRJ as the original source publication. (*Id.* ¶ 12, Ex. 1.) Substantively, the Work details the fatal shooting of a Las Vegas resident at the hands of the Las Vegas Metropolitan Police Department inside of a Las Vegas-based Costco department store. (*Id.* Ex. 1.) Stephens Media LLC ("Stephens Media") assigned ownership of the Work, along with the right to pursue any and all past, present or future infringements of the Work (the "Assignment"), prior to the filing of this action on September 28, 2010. (Doc. 1; Mangano Decl. Ex. 2.)

---

[1] To the extent deemed necessary, Righthaven intends to seek leave to amend its Complaint in

The Defendants are the owners of the Internet domain found at <vcdl.org> (the "Website"). (*Id.* ¶¶ 4-8.) On or about July 22, 2010, the Defendants displayed, without authorization, a 100% copy of the Work on the Website, which serves as the basis for Righthaven's copyright infringement claims in this action (the "Infringement"). (*Id.* ¶¶ 9, 13-14, Ex. 2.) Defendants posted the unauthorized, verbatim copy of the Work on the Website as evidenced by the fact that it reads "From Philip Van Cleave", who operates the Website along with Mr. Snyder. (*Id.* Ex. 2.)

Despite Righthaven's clear evidence of Defendants having copied 100% of the Work without authorization and despite the Work having come from a source publication in this jurisdiction, which is directed to residents of this jurisdiction, and which concerned events occurring within this jurisdiction, Defendants moved to dismiss this case for lack of personal jurisdiction (the "First Motion") Federal Rules of Civil Procedure 12(b)(2). (Doc. # 7 at 6-12.) Defendants' First Motion further asked the Court to dismiss Righthaven's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") based on application of several affirmative defenses, such as fair use, which are not properly before the Court since no answer has been filed. (*Id.* at 12-16.) Finally, defendants' First Motion sought dismissal of to Righthaven's Complaint for lack of standing on the ground that it did not own the Work at the time of infringement. (*Id.* at 12-13.)

While Defendants' First Motion was pending, Judge Hunt issued the *Democratic Underground* decision. (Doc # 116.) The decision concluded that Righthaven lacked standing to maintain its copyright infringement claim based on the contractual terms of the SAA between the company and Stephens Media. (*Id.* at 10-11.) In so reaching this conclusion, Judge Hunt refused to consider the Clarification entered into by Righthaven and Stephens Media in response to issues being raised concerning Righthaven's standing to maintain its copyright infringement actions. (*Id.* at 8 n.1.) The *Democratic Underground* decision also failed to address the effect of the assignment and transfer of the right to sue for an accrued past infringement claim under *Silvers* without reference to the SAA. (*Id.* at 6.) Accordingly, Judge Hunt determined that he

5

1  lacked subject matter over Righthaven's copyright infringement claim and dismissed
2  Righthaven's Complaint without prejudice. (*Id.* at 10-11.)
3     On June 23, 2011, this Court denied Defendants' First Motion. (Doc. # 26.) In doing so,
4  the Court found that it could properly exercise personal jurisdiction over the Defendants. (*Id.* at
5  8.) The Court further rejected Defendants' attempt to obtain dismissal on the affirmative
6  defenses of fair use and implied license. (*Id.* at 9-11.)
7     Most importantly for purposes of adjudicating the current Motion, the Court also denied
8  Defendants' request for dismissal for lack of standing. (Doc. # 26 at 11-14.) In so denying
9  Defendants' request, the Court correctly noted that Righthaven had alleged sufficient facts to
10 vest it with standing under a Rule 12(b)(6) analysis. (*Id.* at 13-14.) The Court then advised that
11 standing challenges requiring an analysis of the Assignment, the Infringement and the nature of
12 the assigned claims "could be raised in a motion for summary judgment" after the parties
13 engaged in discovery. (*Id.* at 13:10-13.) In so advising, the Court expressly acknowledged the
14 intervening decision in *Democratic Underground*. (*Id.* at 13 n.2.)
15    Defendants did not heed the Court's advice in the June 23rd Order as to how a
16 subsequent standing challenge should be presented. Rather than engaging in discovery and
17 seeking summary judgment on the issue of standing, Defendants simply elected to file the instant
18 Motion, which is not a request for summary judgment and despite no discovery having been
19 conducted. Defendants' apparent disregard of the Court's suggested means of presenting this
20 issue for resolution, the Motion should nevertheless be denied as argued below.

21 **III.   ARGUMENT**

22    Standing is a jurisdictional requirement that can be raised at any time, including *sua*
23 *sponte* by the court, as is the case here. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d
24 1031, 1035 (9th Cir. 2008). Pursuant to Section 501(b) of the Copyright Act, only "the legal or
25 beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.
26 *Silvers*, 402 F.3d at 884. Section 106 of the Act, in turn, defines the exclusive rights that can be
27 held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute
28 copies). Exclusive rights in a copyright may be transferred and owned separately—for example,

through assignment or an exclusive license - but no exclusive rights exist other than those listed in Section 106. *Silvers*, 402 F.3d at 885. While the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright. *See id.* at 890.

As the assignee-owner of the full right and title in and to the Work together with the express language transferring it the right to sue for, among other things, past accrued copyright infringement claims, Righthaven has standing to maintain this action. (Mangano Decl. Ex. 1.) In addition, Stephens Media and Righthaven executed the Clarification in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.) The Clarification has cured any defects in standing that existed under the parties' original contractual relationship. (*Id.*)

Righthaven and Stephens Media, however, have not turned a deaf ear toward the concerns expressed by Judge Pro in the *Hoehn* decision, which presently represents the most comprehensive, albeit potentially advisory analysis, of the Clarification. (Doc. # 28 at 10.) Rather, the parties entered into the Restated Amendment as a means for addressing the concerns expressed in the *Hoehn* decision. (Mangano Decl. Ex. 1 at 1.) Therefore, as set forth below, Righthaven asserts that standing has been properly conferred under the Restated Amendment should the Court find otherwise in its analysis of the Assignment, the original SAA, and the Clarification.

**A.   Righthaven Has Standing to Sue for Past Infringement Under the Plain Language of the Assignment.**

Binding precedent establishes that the Assignment from Stephens Media to Righthaven conveys standing upon Righthaven to bring this case. As previously noted by the Court in its June 23rd Order, in *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90. In so holding, the panel

7

in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased. *Silvers,* 402 F.3d at 889.

Multiple courts in this District, including this very Court, have determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, **based on the plain language of the copyright assignment**: (1) *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011); (2) *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010); and (3) *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010). (*See also* Gibson Decl. ¶¶ 9-10.)[2] Just like the assignments at issue in these cases, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all past accrued causes of action for copyright infringement. Specifically the Assignment at issue here transferred all exclusive ownership rights in and to the works to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

---

[2] The *Democratic Underground* decision mischaracterized Righthaven's reliance on these decisions as being "[a]t best . . . disingenuous." (Doc. # 116 at 10:16-17.) Righthaven respectfully maintains that its reliance on these cases, both here and in the *Democratic Underground* case, are not and were not disingenuously asserted in any way. To clarify any misunderstanding this Court may construe from the harsh language contained in the *Democratic Underground* decision, Righthaven cites these prior decisions in support of its proposition that courts from this judicial district have found that the plain language of the assignments at issue complied with the requirements of the *Silvers* decision. Consistent with these prior decisions, the *Democratic Underground* decision did not conclude the plain language of the assignment at issue violated the requirements of the *Silvers* decision. (*See* Doc. # 116 at 6-11.) Rather, the *Democratic Underground* decision found that the assignment *in view of the original SAA terms* failed to comply with the *Silvers* decision. (*Id.* at 6.)

(Mangano Decl. Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive ownership rights required under the Copyright Act to bring suit for past accrued acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work, which, as discussed below, does not obviate the right to sue for a past accrued infringement expressly transferred contemporaneously with ownership through the Assignment.

> **1. The Assignment, and not the SAA, effectuates the transfer of ownership from Stephens Media to Righthaven, along with the right to sue for, among other things, past accrued claims of infringement of the Work.**

The SAA's provisions neither serves to effectuate the assignment of any works nor does it alter the unambiguous language of the Assignment or the rights that Righthaven acquired thereunder.  First, the SAA does not effectuate the assignment of any work. (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights. (*Id.*) The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works. (*Id.*) This license back of rights to exploit works can only be effective ***after Righthaven has been assigned the work from Stephens Media.*** Accordingly, the SAA does not effectuate the assignment or any work, but for purposes of the Court's standing analysis it serves to outline rights, including rights licensed back to Stephens Media, after Righthaven has been assigned a work along with the right to sue for, among, other things, past accrued infringement claims.

## 2. The license back of rights to Stephens Media and the SAA's right of reversion do not change Righthaven's standing to sue for past accrued infringement claims the plain language of the Assignment.

Neither the *post-assignment* license back of exploitation rights to Stephens Media nor the right of reversion under the SAA obviates Righthaven's standing to maintain this case for an accrued copyright infringement claim in view of the Assignment.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights." *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property. *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee ***prior to being divested through licensure***.

While the transactional structure described in the original SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here. As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement.  *Silvers,* 402 F.3d at 889-90.

The transactional structure under the original SAA and the actual assignment of rights comport with the holding in *Silvers*.  Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned.  (Mangano Decl. Ex. 1.)

While Righthaven promises under the original SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until *after* the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims.  Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

Nor does the original SAA's right of reversion provision impact Righthaven's standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions. (*See, e.g.,* Gibson Decl. Ex. 2 § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, ***unless and until Stephens Media exercises its right of rev****ersion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.  Accordingly, the license back structure and the right of reversion terms under the original SAA cannot obviate Righthaven's standing to maintain this action for an accrued infringement claim based on the plain language of the Assignment.

**B.    Righthaven Has Standing to Sue for Infringements Under the Clarification.**

It is black-letter law that a copyright owner has standing to bring a claim for infringement.  17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right ….").  A copyright owner need not have been the author or original owner; indeed, copyright law recognizes the transferability of the rights protected by copyright.  17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive

license.")  It is also black-letter law that a non-exclusive licensee lacks standing to sue for infringement.  *See id.*; *Silvers*, 402 F.3d at 898 n. 7.

     Pursuant to the Clarification, Righthaven obtained "all right, title and interest to said Work such that Righthaven shall be recognized as the copyright owner of the Work, shall have the right to register said Work with the United States Copyright Office, and shall have the right to pursue past, present and future infringements of the copyright in and to the Work." (Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) As the owner of the copyright, Righthaven has the ability to exploit its exclusive rights as it sees fit.  Righthaven may reproduce the copyrighted work, create derivative works, assign the copyright, grant licenses, receive royalty payments and sue for copyright infringement.  In short, Righthaven may utilize the entire bundle of exclusive rights that accompany copyright ownership.  Nothing in the Assignment or Clarification prevents Righthaven from doing so.  Righthaven granted a non-exclusive license back to Stephens Media to use the copyrighted work (*Id.* Ex. 3 at § 7.2; Hinueber Decl. Ex. 3 at § 7.2), but that license does not divest Righthaven of its rights.  *See Silvers*, 402 F.3d at 898 n. 7.

     Righthaven acknowledges the *Hoehn* decision did find, although potentially advisory in nature, that it lacked standing failed to bring suit for past infringement after considering the SAA and the Clarification.  Righthaven respectfully maintains the court erred in reaching this conclusion.  First, the *Silvers* decision did not involve a substantive evaluation of underlying contractual rights and responsibilities. Rather, in *Silvers*, the copyright owner executed an "Assignment of Claims and Causes of Action" in favor of the plaintiff, and retained ownership of the underlying copyright.  *Silvers,* 402 F.3d at 883.  The copyright owner in *Silvers* never purported to assign the underlying work itself, or any rights protected by copyright.  Thus in *Silvers*, the ***only*** right, title and interest assigned was the right, title and interest in litigation.  That is not the case before this Court.

     Another case also relied on in the *Hoehn* decision, *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), is similarly inapposite.  As a preliminary matter, *Nafal* was decided under the more narrow 1909 Copyright Act (*id.* at 1138), which, in contrast to the 1976 Copyright Act, did not allow the bundle of rights protected by copyright to be separable. *Silvers*, 402 F.3d 881 at

896. Moreover, the plaintiff in *Nafal* never alleged that he owned the copyright at issue. Instead he was assigned a purported one-half interest to an exclusive licensee's rights but lacked any ability to exercise any rights under the copyright. 540 F. Supp. 2d at 1143. Additionally the plaintiff in *Nafal* was not a party to the original exclusive license agreement with the copyright owner (*id.* at 1141) and was also not t a co-exclusive licensee because he lacked any of the rights held by the other co-licensee (*id.* at 1142). Here, by contrast, the original copyright owner, Stephens Media, assigned the entirety of the Work to Righthaven, and Righthaven granted back to Stephens Media only the right to exploit the copyright on a non-exclusive basis under the Clarification. (Mangano Decl. Ex. 2; Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) Under these circumstances, the only party to the transaction with any exclusive rights and the only party with standing to sue for copyright infringement is Righthaven.

   **C. Neither the Purpose of the Transaction nor Stephens Media's Retention of Certain Rights Under the Clarification Invalidates the Assignment.**

  The *Hoehn* decision further called into question the existence of two provisions in the Clarification: (1) a provision giving Stephens Media 30 days written notice prior to exploiting an infringed work; and (2) a separate provision giving Stephens Media the option to re-purchase the copyright. Any concerns over the effect of these provisions have been fully addressed in the Restated Amendment. (Mangano Decl. Ex. 1.) To the extent the Court somehow declines to consider the Restated Amendment, Righthaven respectfully asserts that the Clarification's provisions do not invalidate the rights assigned by Stephens Media, which includes the right to sue for, at least, acts of past infringement.

  Parties routinely enter into complex agreements transferring intellectual property rights. It is well established that these transfers are not invalid simply because the original owner retains some rights. *See, e.g., Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment do not invalidate it")); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741,

746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses. Such limitations on an assignment do not invalidate or make it a sham, however.")

Moreover, the Ninth Circuit, more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper. In *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645, 648 (9th Cir. 1968), the Ninth Circuit held:

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant. We assume that to be true. Defendants urge that the transaction was a sham. The documents were in fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable. If not, then the purpose underlying their execution is of no concern to the defendants.

Thus, the Ninth Circuit long ago rejected the argument that the purpose behind a business transaction or a business itself has any bearing on the issue of standing.

Finally, as the Ninth Circuit held in *Silvers,* courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights. 402 F.3d at 888; *see also Davis v. Blige,* 505 F.3d 90, 104 (2d Cir. 2007) ("Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").

Courts in numerous patent cases have rejected the argument that an otherwise valid transfer of intellectual property rights made to confer standing is somehow defective, or a sham, because the motivating business purpose is litigation. For example, in a highly analogous case in the patent context, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid. *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994). There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement. The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the

conclusion of the litigation, a much greater restriction than that present in this case. *Id.* at *6. The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing." *Id.* The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation. In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

*Id.* Thus, in the very context that *Silvers* advises courts to consider, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit. *Id.* at *6-7.

In yet another case decided by the Federal Circuit, the court held that a grant of patent rights was sufficient to confer standing notwithstanding the fact that the grantor retained several rights relating to the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991). In *Vaupel*, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." *Id.* at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Id.* Here, as in *Vaupel*, the rights retained by Stephens Media do not negate the exclusive rights conferred to Righthaven; thus, Righthaven is the owner of the copyright and has standing to sue for infringement.

### D. Righthaven Unquestionably Has Standing to Sue Under the Restated Amendment.

There can be no doubt that Righthaven has standing to maintain this case under the Restated Amendment. In fact, the Restated Amendment was expressly designed to address the concerns set forth in the *Hoehn* decision, which sets forth the most comprehensive and

instructive discussion to date concerning the alleged contractual provisions that divest the company of standing to sue over content assigned to it by Stephens Media. (Mangano Decl. Ex. 1 at 1.)  The Restated Amendment further renders any reliance on the *Hoehn* decision moot.

  First, the Restated Amendment fully clarifies that Stephens Media holds a non-exclusive license to exploit the works assigned to Righthaven. (*Id.*) As a non-exclusive licensee, Stephens Media cannot sue for infringement of the Work. *See Davis,* 505 F.3d at 101("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996) ("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.").  Rather, the right to sue for infringement of the work is held by Righthaven, which acquired ownership of the Work based on the Assignment from Stephens Media. *See* 17 U.S.C. § 101; 17 U.S.C. § 501(b).

  Second, the Restated Amendment eliminates two provisions that were concerns in the *Hoehn* decision: (1) a provision giving Stephens Media 30 days written notice prior to exploiting an infringed work; and (2) a separate provision giving Stephens Media the option to repurchase the copyright. (*See* Doc. # 28 at 10.)  The 30-day notice provision has been completely eliminated from the Restated Amendment. (Mangano Decl. Ex. 1.)  Likewise, Stephens Media's option to repurchase and assigned work may only be exercised five years after the date of assignment and fair market value must be paid to require a work. (*Id.*)  Thus, Righthaven owns the works for at least a five-year term without the possibility of Stephens Media exercising its option to repurchase shortly after assignment under a potential scenario recognized in the *Hoehn* decision given the terms of the Clarification.

  Finally, the Restated Amendment does not restrict Righthaven's ability to exploit assigned works in any manner.  Under the Clarification, the *Hoehn* decision expressed concern over the requirement that Righthaven notify Stephens Media of its intent to exploit any work outside of copyright infringement litigation.  This notice requirement does not exist under the

1  Restated Amendment. (Mangano Decl. Ex. 1.) Moreover, there is no restriction imposed on
2  Righthaven's ability to exploit works or to license works to other parties. (*Id.*)
3        Quite frankly, Righthaven has sought to fully address all of the concerns expressed in the
4  *Hoehn* decision. In doing so, this Court is presented with record that is unlike those at issue in
5  either the *Democratic Underground* or the *Hoehn* decisions. Most importantly, however,
6  Righthaven has protectively addressed the concerns expressed as an impediment to it having
7  standing.
8        In sum, Righthaven asserts that it has standing to maintain this infringement action based
9  on the plain language of the Assignment, which not only transfers ownership to the company, but
10 also grants the right to sue for, among other things, accrued claims of infringement of the Work.
11 (Mangano Decl. Ex. 1.) To the extent the Court somehow finds the original SAA impairs
12 Righthaven's standing, any objectionable terms have potentially been addressed through the
13 Clarification. Finally, the Restated Amendment, which expressly addresses the concerns set
14 forth in the *Hoehn* decision, unquestionably leaves absolutely no doubt that Righthaven has
15 standing to maintain this action. Accordingly, Defendants' Motion must be denied.

## IV.   CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court deny Defendants' Motion and find that Righthaven has standing to maintain this action.

Dated this 22nd day of July, 2011

                                              SHAWN A. MANGANO, LTD.

                                              By: /s/ Shawn A. Mangano
                                              SHAWN A. MANGANO, ESQ.
                                              Nevada Bar No. 6730
                                              shawn@manganolaw.com
                                              9960 West Cheyenne Avenue, Suite 170
                                              Las Vegas, Nevada 89129-7701

                                              *Attorney for Plaintiff Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 22nd day of July, 2011, I caused the foregoing document and supporting materials to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel:     (702) 304-0432
Fax:    (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*