Richard E. Gardiner (Pro Hac Vice)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel:  (775) 323-1601
Fax:  (775) 348-7250
Email:  rdelong@parsonsbehle.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, | Case No.  2:10-cv-01683-GMN-PAL |
| Plaintiff, | |
| v. | |
| VIRGINIA CITIZENS DEFENSE LEAGUE, INC., *et al.,* | |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION**

In its Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

(ECF No. 31) ("Response"), Righthaven continues to assert arguments that have been rejected by

four judges of this District in at least five cases.  No judge has upheld standing (subject matter

jurisdiction) in Righthaven cases in this District since the Strategic Alliance Agreement ("SAA") was revealed in the case of *Righthaven LLC v. Democratic Underground LLC,* No. 2:10-cv-01356.  The SAA conclusively showed that the central allegations in Righthaven's complaint--that it held the exclusive rights under 17 U.S.C. § 106 to reproduce the Work, display it, distribute copies of it, and prepare derivative works based on the Work--were false.

Righthaven's claims to have standing as the "owner" of the Work are incorrect and have been uniformly rejected.  Righthaven apparently also claims that because it allegedly owned exclusive rights for an instant, coupled with an assignment of accrued claims, it is thereafter entitled to bring suit even when it no longer possessed any exclusive rights.  That assertion is based on a misreading of this Court's Order of June 23, 2011 (ECF No. 26) ("Order") and is conclusively refuted by statute and case law.

Righthaven has now presented three different versions of the SAA, each one purporting to establish different "facts" regarding standing.  Because Righthaven unquestionably lacked standing under the original Strategic Alliance Agreement (ECF No. 28-1) ("SAA"), Righthaven and Stephens Media entered into a "Clarification and Amendment to Strategic Alliance Agreement" dated May 9, 2011 (ECF No. 34 at 27-31).  After Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 27) ("Motion") was filed on June 30, 2011, Righthaven and Stephens Media have again attempted to manufacture standing and jurisdiction by entering into yet another replacement agreement, the "Amended and Restated Strategic Alliance Agreement" dated July 7, 2011.[1]  Both of these agreements purported to change retroactively the facts regarding ownership of the copyright.

As the judges of this District have noted in several opinions, that attempt must fail,

---

[1]  In Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, the "Clarification and Amendment to Strategic Alliance Agreement," dated May 9, 2011, was referred to as the "Amendment."  To distinguish between the two amended documents, the May 9 amendment will be referred to as "Amended SAA," and the "Amended and Restated Strategic Alliance Agreement," dated July 7, 2011, will be referred to as the "Restated SAA."

because standing is determined as of the time the complaint is filed, and cannot be conferred by postcomplaint efforts to alter the facts.  Righthaven has not even attempted to distinguish or refute the Supreme Court, Ninth Circuit, and other cases affirming that principle.  Consequently, the purported retroactive changes to the jurisdictional facts attempted to be made by the Amended SAA and the Restated SAA must be disregarded.

I.      **RIGHTHAVEN LACKS STATUTORY STANDING TO SUE, AND THIS CASE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

   A.      **Righthaven lacks standing to sue under the Copyright Act.**

        *1. Decisions in this District.*

At the time Righthaven filed this suit and most of the suits pending in this District, the original Strategic Alliance Agreement, executed on January 18, 2010, was in effect between Righthaven and Stephens Media.  A copy of the original SAA is attached as Exhibit A to the Declaration of Dan M. Peterson (ECF No. 28-1), and Righthaven has now filed a copy of the SAA with its Response.  Declaration of Steven A. Gibson (ECF No. 34, at 10-25).  The SAA shows that the central contentions on which Righthaven's complaint in this case were based—that it held the "exclusive rights" to the Work under 17 U.S.C. § 106, and that Defendants had allegedly taken actions in derogation of Righthaven's "exclusive rights"—were entirely false. Cmplt. ¶¶ 32-39 (ECF No. 1).

Because Righthaven did not own any exclusive right in the work at the time the complaint was filed, it plainly lacked (and lacks) standing to sue.  *See* Motion at 8-15.   The judges of this District have therefore dismissed Righthaven cases on grounds that subject matter jurisdiction is lacking.

Defendants' Motion noted that, at the time the Motion was filed, three Righthaven cases had been dismissed for lack of standing due to the fact that Righthaven did not own any exclusive rights in the works in question.  *Righthaven LLC v. Democratic Underground LLC,* No. 2:10-cv-

01356, ECF No. 116 (Judge Hunt); *Righthaven LLC v. Hoehn*, 2:11-cv -00050-PMP-RJJ, ECF No. 28 (Judge Pro); *Righthaven LLC v. DiBiase*, 2:10-cv-01343-RLH–PAL, ECF No. 72 (Judge Hunt).

In July, at least two more Righthaven cases in this District were dismissed for lack of standing.   On July 13, 2011, Judge Dawson dismissed Righthaven's cause of action for lack of standing in *Righthaven LLC v. Mostofi*, 2:10-CV-1066-KJD-GWF, ECF No. 34.

As described in the Motion at 7, Judge Mahan had previously issued an order to show cause why the *Pahrump Life* case should not be dismissed due to Righthaven's lack of standing. *Righthaven LLC v. Pahrump Life*, 2:10-cv-01575-JCM-PAL, ECF No. 21.   On Wednesday, July 27, 2011, Judge Mahan dismissed that lawsuit for lack of standing, and further denied Righthaven's motion for leave to amend the complaint in that case.  *Pahrump Life*, ECF No. 63. A formal order is due to be submitted by August 3, 2011, to the court for signature.  *Id.*[2]

Thus, in all cases decided since the SAA was disclosed, the judges of this Court have unanimously concluded that the District Court lacks subject matter jurisdiction.  For the reasons demonstrated in the Motion, and further discussed below, those decisions were correct and this case should be dismissed as well.[3]

Although Righthaven's arguments are frequently elusive, it seems to be making two arguments regarding the original SAA.  First, it seems to be contending that it was the "owner" under the terms of the assignment, even though it owned none of the exclusive rights under the copyright.  Second, it seems to argue, by selective and incomplete quotation from *Silvers*[4] and from this Court's June 23 Order, that if a right to sue for accrued causes of action is transferred

---

[2] In addition, Judge Hicks has entered an order to show cause why the ten Righthaven cases pending before him should not be dismissed for lack of subject matter jurisdiction.  *See* Motion at 6-7.

[3] For reasons stated in Part I.B. below, and set forth in Part I.B. of the Motion, this Part I. A. will address only the situation that existed when this lawsuit was filed and the terms of the original SAA.

[4] *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (en banc).

along with exclusive rights, the assignee has standing to sue even after it no longer possesses any exclusive rights. Neither contention is supportable. *See* Parts I.A.2. and I.A.3., below. There is a third reason why Righthaven does not have standing under either theory: it never received an assignment of exclusive rights. *See* Part I.A.4., below.

### 2. Righthaven is not the "owner"

Righthaven claims that it has standing because it is "the assignee-owner of the full right and title in and to the Work" and there is also "express language transferring it the right to sue for, among other things, past accrued copyright claims." Response at 7. Although there is language purporting to transfer the right to sue, the first part of this statement is flagrantly incorrect. Righthaven does not have "full right and title in and to the Work." It has *no* right and title to the work. Ownership of a copyright consists of a bundle of rights established by 17 U.S.C. § 106. Section 7.2 of the SAA strips away from Righthaven every single right composing that bundle, if indeed it ever even received any of those rights.

It is helpful to remember the language of Section 7.2 of the SAA:

> 7.2 ***Despite any such Copyright Assignment***, ***Stephens Media shall retain*** (and is hereby granted by Right*haven*) ***an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation*** of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Right*haven*'s maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an ***exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights.*** . . . (emphasis added)

In *Mostofi*, Judge Dawson rejected the precise argument based on the language of the assignment that is now again being made by Righthaven:

1
2
3
4

> Plaintiff alleges that the SAA "envisions an assignment to Plaintiff of all right, title, and interest in and to potential copyrighted works." [citing Plaintiff's Opposition]. This is an inaccurate conclusion. Here, the SAA is not ambiguous. The SAA expressly denies Righthaven any right from future assignments other than the bare right to bring and profit from a copyright infringement action.

5
6
7
8
9
10

*Mostofi*, ECF No. 34 at 4.  As Judge Hunt observed,  "The entirety of the SAA was designed to prevent Righthaven from becoming 'an *owner* of *any exclusive right* in the copyright. . . .,' *Silvers*, 402 F.3d at 886 (emphasis in original), regardless of Righthaven and Stephens Media's *post hoc*, explanations of the SAA's intent or later assignments." *Democratic Underground*, ECF No. 116 at 6.  *See also Hoehn*, ECF No. 28 at 8-10.

11
12

Righthaven next asserts that it has standing because:

13
14
15
16
17
18
19
20
21
22

> Multiple courts in this District, including this very Court, have determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, **based on the plain language of the copyright assignment**: (1) *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011); (2) *Righthaven LLC v. Majorwager.com, Inc.*, 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010); and (3) *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010). (*See also* Gibson Decl. ¶¶ 9-10.) 2 Just like the assignments at issue in these cases, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all past accrued causes of action for copyright infringement. Specifically the Assignment at issue here transferred all exclusive ownership rights in and to the works to Righthaven, and expressly included all accrued causes of action for copyright infringement. . . . (emphasis in original).

23

Response at 8.

24
25
26
27
28

What Righthaven fails to mention is that those decisions were procured by a massive, knowing, brazen deception practiced by Righthaven on this Court and other judges of this District.  The complaints in those cases, as in the case at bar, represented that *at the time the suits were filed* Righhaven owned "the exclusive right to reproduce the Work," "the exclusive right to

prepare derivative works based on the Work," "the exclusive right to distribute copies of the Work," and "the exclusive right to publicly display the Work." *See* VCDL Cmplt. ¶¶ 32-35 (ECF No. 1); *Vote for the Worst*, Cmplt. ¶¶ 32-35 (ECF No. 1); *Majorwager.com*, Cmplt. ¶¶ 64-67 (ECF No. 1); *Dr. Shezad Malik Law Firm*, Cmplt. ¶¶ 34-37 (ECF No. 1).  It held none of those rights.  Those statements were utterly false, and went to the very heart of each case.[5]  To add as an afterthought, as Righthaven now does (Response at 9) that "Righthaven licensed back to Stephens Media the right to exploit the Work" neither justifies the original false representations to the judges of this District and to the parties, nor gives Righthaven standing.  If Righthaven ever received any exclusive rights at all, it did not have them when Righthaven filed these suits.  The fact that Righthaven "licensed back" all of the exclusive rights to Stephens Media does not create standing for Righthaven; it destroys it.

### 3.  An entity must currently own exclusive rights in order to sue

In its Response, Righthaven still maintains that it had standing to sue under the original SAA by cobbling together an argument that willfully misreads both the holding in *Silvers* and certain sentences in this Court's Order of June 23, 2011 ("Order").  That Order denied Defendants' Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim under Rule 12(b)(2) and Rule 12(b)(6).  It is worth recalling what Defendants argued in that motion.  As pertinent here, and apart from other grounds for dismissal, Defendants alleged that the complaint was deficient on its face because, although it alleged that Righthaven was the exclusive owner of the various statutory rights under the copyright, it did not specifically allege that the right to sue for accrued causes of action for infringement had been transferred to it.  ECF

---

[5] The Court is no doubt aware that Judge Hunt imposed sanctions on Righthaven under Rule 11 and the inherent power of the court.  *Democratic Underground*, ECF No. 138 (minutes of proceedings); *see also* ECF No. 137 (transcript of hearing).  He noted, among other things, that there is "a significant amount of evidence that Righthaven made intentional misrepresentations to the Court and also engaged in a concerted effort to hide Stephens Media's role in this litigation. This conduct demonstrated Righthaven's bad faith, wasted judicial resources, and needlessly increased the costs of litigation."  ECF No. 138.

No. 7 at 12-13.  As succinctly described in Defendants' Reply at 11 (ECF No. 22) the complaint "fails to allege an essential element for Righthaven to be able to bring suit under § 501 of the Copyright Act; namely, that it owned the copyright at the time of the alleged infringement, or that the right to bring suit for accrued causes of action had been assigned to it."  *See generally id*. at 11-15.

In evaluating this argument on the Motion to Dismiss, this Court applied a "notice" pleading standard, and found that the failure to specifically allege the assignment of accrued causes of action was not fatal to the complaint.  Order at 13 (ECF No. 26).  The Court found that the complaint did plead the "essential facts" sufficiently, namely "that Plaintiff owns the copyrighted work" and the alleged infringement.  *Id.*  The Court took assurance from the fact that "there is no dispute that Plaintiff was the owner of the copyright at the time the complaint was filed."  *Id.* at 13-14.

As we now know, those formal representations by Righthaven in the Complaint that it was the owner of the copyright, and that it owned the exclusive rights under § 106 to distribute, reproduce, display, and prepare derivative works from the Work, were manifestly false.

Now, Righthaven selectively quotes[6] from the Court's Order to try to fashion a new, unsupported rule of law.   Response at 3, quoting Order at 12.   It states that "If Righthaven construes the foregoing observations by the Court correctly, standing to sue for an accrued past infringement can be maintained by an assignor as long as the right to do so is expressly conveyed with a transfer of ownership."  Righthaven attempts to twist the Court's words into a new rule of law to the effect that if an assignment of "ownership" *ever* occurred, and a right to sue for accrued infringements was included along with the assignment, then the assignee "maintains" a perpetual

---

[6] Or rather, misquotes.  Righthaven quotes this Court as stating that suit can be brought for a past infringement if "the assignee also holds the actual copyrights. . . . ".  The Court's opinion states that this can be done if "the assignee also *owns* the actual copyrights. . . ."  Order at 12.

right to sue for the accrued causes of action, even if it at the time of suit it had ceased to be the owner of any exclusive rights under the copyright.[7]  This, of course, is not the law.

As this Court's order made clear, as the Ninth Circuit and other courts have repeatedly stated, and as other judges of this District have expressly found, "[o]nly the *owner of an exclusive right* under the copyright act is entitled to sue for infringement."  Order at 12 (quoting *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 889 (9th Cir. 2005)) (emphasis added).  That person or entity must own the exclusive right at the time of suit, not have held the right for a nanosecond at some point in the past.  That the person instituting suit must presently hold the right is plainly stated in the copyright statute itself.  Section 17 U.S.C. § 501(b), the statutory subsection that creates a right of action for copyright infringement, states:

> (b) *The legal or beneficial owner of an exclusive right* under a copyright *is entitled*, subject to the requirements of section 411, *to institute an action for any infringement* of that particular right committed while he or she is the owner of it. (emphasis added)

The statute says that "the legal or beneficial owner of an exclusive right" is entitled to institute the action.  It does not say "someone who for a fleeting instant was once the owner of an exclusive right" may thereafter institute an action even though he or she is no longer the owner of an exclusive right.

Righthaven contends that although the "general terms" of the SAA causes "certain rights to exploit the works to be licensed back to Stephens Media," it should nevertheless have standing to sue.  But the SAA, in the strongest and most exhaustive language imaginable, causes <u>all</u> of the exclusive rights under § 106 to be held by Stephens Media, with Righthaven having nothing but a naked right to sue for past infringements.

---

[7] In the Response at 10, Righthaven makes this argument explicit:  "Neither the post-assignment license back of exploitation rights to Stephens Media nor the right of reversion under the SAA obviates Righthaven's standing to maintain this case for an accrued copyright infringement claim in view of the Assignment."  That is simply incorrect, when Righthaven has been divested of ownership of any and all exclusive rights (if it ever received such rights).

An "exclusive right" means that all parties other than the entity holding the exclusive rights have no right to exploit that particular right.   The SAA states that Stephens Media possesses all of the rights "to the greatest extent permitted by law," that it has "unfettered and exclusive ability" to exploit the copyright, and that Righthaven has "no right or license to Exploit or participate in the receipt of royalties," except in connection with litigation recoveries.  *Silvers* conclusively established that "[o]nly the owner of an exclusive right under the copyright act is entitled to sue for infringement."  *Silvers*, 402 F.3d at 889.  Righthaven owned nothing in the copyright at issue in this case, except a right to sue, which is itself a legal nullity under *Silvers*.

Righthaven states that "[w]hile the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright."  Response at 7 (citing *Silvers* at 890).

That principle, however, avails Righthaven absolutely nothing.  The issue is not whether a right to sue for accrued causes of action can be transferred along with exclusive rights.  The issue is who actually owns the exclusive rights when suit is filed, because that is the only person or entity who can sue.   That was made perfectly clear in *Silvers* just after the language that Righthaven references.   The *Silvers* court, at 889-90, was discussing the Second Circuit's decision in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991), which merely stated that a copyright and accrued causes of action could both be purchased at the same time.  Immediately after that statement, *Silvers* noted that in *ABKCO*:

> The court reaffirmed the principle of *Eden Toys* [*v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982)] that *a party that has no ownership interest has no standing to sue*; "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." *Id.* at 980. (emphasis added).

The *Silvers* court had previously cited *Eden Toys* approvingly for the proposition that "one who owns no exclusive right in a copyright may not sue for infringement."  *Silvers* at 889.  Here,

Righthaven owned no exclusive rights when it filed suit.[8]

### 4. Righthaven did not receive any exclusive rights under the assignment.

Even if the foregoing argument by Righthaven had any validity (which it does not, because it is contrary to both statute and established case law) it would not even apply to the facts of this case. According to the language of the SAA, Righthaven never even received any exclusive rights in the copyright. The SAA went into effect between Stephens Media and Righthaven beginning on January 18, 2010. The purported assignment in this case did not take place until July 27, 2010. ECF No. 32-2. The SAA, which contemplates future "Copyright Assignments" in exactly the form used in this case, expressly declares that the terms of Section 7.2 govern "[d]espite any such Copyright Assignment." Section 7.2 states at the outset that Stephens Media "shall retain" an exclusive license to exploit the copyright. Consequently, the exclusive rights to exploit the copyright were never transferred by the assignment, because Section 7.2, which prevails over the assignment, and was in effect prior to the assignment, provided that they would be retained by Stephens Media. As Judge Hunt noted in response to a similar argument in the *Democratic Underground* case, "Stephens Media retained the exclusive rights, never actually transferring them to Righthaven regardless of Righthaven's and Stephens Media's current contentions." *Democratic Underground*, ECF No. 116 at 10.

Although language regarding an exclusive license being granted from Righthaven to Stephens Media appears thereafter, Righthaven possessed no exclusive rights that it could grant to Stephens Media, since they had at all times been retained by Stephens Media. That later language regarding a grant is surplusage, and merely a "belt and suspenders" technique to ensure that

---

[8] Righthaven attributes the following proposition or statement to this Court, as having been made in the June 23 Order: "[I]n Silvers, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work." As noted above, transfer of a right in an accrued past infringement along with an exclusive right does not create standing if the entity no longer owns the exclusive right at the time of suit.

PARSONS
BEHLE &
LATIMER

Stephens Media had all exclusive rights, and Righthaven had none.

**B.      Standing is determined at the time the complaint is filed, and any subsequent amendments to the SAA cannot change the jurisdictional facts.**

In their Motion, Defendants presented case law demonstrating that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).   Although that principle has been repeatedly recognized by the United States Supreme Court, it is worth noting that it has also been explicitly quoted and followed by the Ninth Circuit.  *See, e.g., Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1257 (9th Cir. 2010); *Scott v. Pasadena Unified School District*, 306 F.3d 646, 655 (9th Cir. 2002);  *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

Changes in the facts that occur after suit is filed cannot confer standing that did not previously exist.   "[A] plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards." *Pollack v. Department of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000)); *see also Lujan* at 569 n.4 ("a plaintiff cannot retroactively create jurisdiction based on postcomplaint litigation conduct.")   Relying on these principles, Judge Dawson held in *Mostofi*, ECF No. 34 at 6:

> Although a court may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves. *Newman-Green*, 490 U.S. at 830. As an example, a party who misstates his domicile may amend to correctly state it. This is an amendment of the allegation. However, that party is not permitted to subsequently move in order to change his domicile and amend accordingly. This would be an amendment of the jurisdictional facts, which is not allowed. *See id*. Here, Plaintiff and Stephens Media attempt to impermissibly amend the facts to manufacture standing. Therefore, the Court shall not consider the amended language of the SAA, but the actual assignment and language of the SAA as it existed at the time the complaint was filed.

PARSONS
BEHLE &
LATIMER

1
2

Similar principles were applied in the *Democratic Underground* case. ECF No. 116 at 7.

3
4

Righthaven contends that Judge Hunt's decision in the *Democratic Underground* case was

5

limited to the original Strategic Alliance Agreement, "and did not consider the effect of a

6

subsequent Clarification and Amendment to Strategic License Agreement (the 'Clarification')

7

upon Righthaven's standing."  Response at 2.

8

But Judge Hunt did consider the Clarification (that is, the Amended SAA).  He simply

9

determined that it could not change the result because of the *Lujan* principles discussed above.

10

What Judge Hunt actually said was:

11
12
13
14

> The Court does not determine whether or not the amended SAA
> would transfer sufficient rights to Righthaven for it to have standing
> *in suits filed after amendment* as the Court need not make that
> determination to rule on these motions. Nonetheless, the Court
> expresses doubt that these seemingly cosmetic adjustments change
> the nature and practical effect of the SAA. (emphasis added).

15
16

*Democratic Underground*, ECF No. 116 at 8, n.1.  Thus, Judge Hunt was quite clear what effect

17

the Amended SAA had in the *Democratic Underground* case:  no effect at all.  He stated only that

18
19

he would not consider the effect, if any, that the Amended SAA might have in "in suits filed

after" the amendment.

20
21

In its Response, Righthaven does not even attempt to contest the applicability of the

22

principle that standing must be determined as of the time the complaint is filed, and that standing

23

cannot be manufactured by postcomplaint actions of the plaintiff.  As noted, this principle is

24

firmly established by Supreme Court and Ninth Circuit cases.  Righthaven's failure even to

25

address those cases leads to an inescapable conclusion:  there is no legal basis to distinguish or

26

refute them.  Accordingly, Righthaven's extensive arguments regarding the supposed effects of

27

the Amended SAA and the Restated SAA are utterly irrelevant.  Response at 11-17.  Those

28

documents cannot be considered, because they are nothing but postcomplaint actions by a plaintiff to attempt to manufacture standing, and the Supreme Court and Ninth Circuit have repeatedly held that such actions cannot retroactively confer standing. *See also* Motion at 15-16.

Judges Hunt, Pro, and Dawson had the Amended SAA in front of them when they dismissed the *Democratic Underground*, *DiBiase*, *Hoehn*, and *Mostofi* cases. *Democratic Underground*, ECF No. 116 at 7; *DiBiase*, ECF No. 72 at 2; *Hoehn*, ECF No. 28 at 10; *Mostofi*, ECF No. 34 at 5-6. Judge Mahan had both the Amended SAA and the Restated SAA before him when he dismissed the *Pahrump Life* case. *Pahrump Life*, ECF No. 26 at 26-30; ECF No. 57-1. In no case has the existence of those amended documents prevented dismissal, and Righthaven has cited no authority to show why the *Lujan* principles do not apply.

## II.  RIGHTHAVEN LACKS ARTICLE III STANDING TO SUE.

As described above and in the Motion, Righthaven lacks statutory standing to sue under 17 U.S.C. § 501. As pointed out in the Motion at 18-19, Righthaven also lacks Article III standing, because it has sustained no injury in fact from any alleged infringement. Thus, under the familiar three part test for Article III standing (*see* Motion at 18), any conduct by Defendants could not have caused a non-existent harm, and any relief requested could not redress a harm that Righthaven has not suffered. That is true not only because Righthaven did not own any exclusive rights under the copyright, but also because the SAA expressly prevented Righthaven from sharing in any monetary proceeds from exploitation of the copyright. SAA, § 7.2.

In its Complaint, Righthaven has not factually alleged any actual harm to it from the ostensible infringement. Instead, to support injunctive relief, it has only pled in conclusory fashion that it would suffer "irreparable harm," without specifically pleading any harm sufficient to support Article III standing for either monetary or injunctive relief. It has not alleged that it

has suffered, or expects to suffer, any monetary harm, harm to reputation, injury to business relationships, market harm, or any other type of injury whatsoever.

Righthaven has not addressed the issue of Article III standing in its Response, and thus has waived any right to contest this issue. *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the Complaint must be dismissed for lack of standing and subject matter jurisdiction.

DATED:  August 1, 2011.

Respectfully submitted,

/s/ Dan M. Peterson
Richard E. Gardiner (Pro Hac Vice)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel:  (775) 323-1601
Fax:  (775) 348-7250
Email:  rdelong@parsonsbehle.com

Attorneys for Defendants

1

2
**<u>CERTIFICATE OF SERVICE</u>**

3
I hereby certify that on the 1st day of August, 2011, I filed a true and correct copy of the

4
foregoing DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

5
FOR LACK OF SUBJECT MATTER JURISDICTION with the Clerk of the Court using the

6
Court's CM/ECF system, which sent electronic notification to all registered users as follows:

7

8
J. Charles Coons, Esq.
Joseph C. Chu, Esq.
Righthaven LLC

9
9960 W. Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129

10

11
Shawn A. Mangano
Shawn A. Mangano, Ltd
9960 West Cheyenne Avenue

12
Suite 170
Las Vegas, NV 89129

13

14
/s/ Dan M. Peterson
Dan M. Peterson

15

16

17

18

19

20

21

22

23

24

25

26

27

28