Richard E. Gardiner (Pro Hac Vice)
Attorney at Law
DAN M. PETERSON PLLC
Dan M. Peterson (Pro Hac Vice)
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel: (703) 352-7276
Fax: (703) 359-0938
Email: regardiner@cox.net
Email: dan@danpetersonlaw.com

-and-

PARSONS, BEHLE & LATIMER
Robert W. DeLong, NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Tel:     (775) 323-1601
Fax:     (775) 348-7250
Email:   rdelong@parsonsbehle.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC,<br>          Plaintiff,<br>v.<br>VIRGINIA CITIZENS DEFENSE LEAGUE, INC., *et al.*,<br>    Defendants. | Case No.   2:10-cv-01683-GMN-PAL |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

When Righthaven filed its Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 31) ("Response"), it also filed a Motion for Leave to File First Amended Complaint (ECF No. 35) ("Motion to Amend"). Accompanying the Motion to Amend was a copy of an Amended Complaint that Righthaven proposes to file if leave is granted (ECF No. 35-1). Defendants have demonstrated in their Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 27) ("Motion to Dismiss") and Reply (ECF No. 36) that: 1) standing must be determined as of the time that the complaint was filed, as the U.S. Supreme Court, Ninth Circuit, and numerous judges of this District have held; 2)     Righthaven lacks standing because it

- 1 -

was not the owner of any exclusive rights in the copyright when the suit was filed, as every judge in this District who has considered the matter has held.     Accordingly, Righthaven's Motion to Amend must be denied, because nothing Righthaven can say in an amended complaint can change the jurisdictional facts that then existed.     Furthermore, the case law cited by Righthaven in its Motion to Amend does not demonstrate that leave to amend should be granted.     Finally, allowing Righthaven to amend in the manner it proposes would be a formula for judicial chaos, since it would cause identical cases to be decided differently regarding standing, depending on the time of decision in relation to Righthaven's multiple "retroactive" amendments, and would permit continued, unilateral manipulation of the record in Righthaven cases.

**I.     IN THE CURRENT LAWSUIT, NOTHING CAN CHANGE RIGHTHAVEN'S LACK OF STANDING AT THE TIME THE COMPLAINT WAS FILED**

There are four possible sets of "facts" under which Righthaven's standing could be determined (though only one of them is proper):

1.     *The "facts" as alleged on the face of Righthaven's complaint.*     Standing cannot properly be determined under the facial allegations of Righthaven's complaint (ECF No. 1), because those are now known to be materially false regarding a central requirement to bring suit:     Righthaven alleged that it owned exclusive rights in the copyright, when in fact it did not. ECF No. 27 at 2-5, 11-15.

2.     *The facts as shown in the Strategic Alliance Agreement ("SAA") as it existed at the time the complaint was filed.* As described in Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 27 at 3-5) ("Motion to Dismiss"), the SAA was disclosed in discovery in the *Democratic Underground* case and, despite fierce resistance by Righthaven, was ultimately unsealed and made public.     The SAA shows on its face that it was executed on January 18, 2010, prior to the filing of the complaint in this case.     ECF No. 28-1 at 11.     By twice amending the SAA in May and July of 2011, Righthaven admits

- 2 -

that the SAA continued in existence after this case was filed in September of 2010. ECF No. 34 at 27-31; ECF No. 28-1. Both plaintiff and defendants have filed the original SAA with sworn declarations in this case. *Id.* The original SAA, including the form of assignment included therein, is indisputably the governing document that was actually in effect on the day the complaint was filed.

3. *The "facts" as shown in the Amended SAA.* Righthaven executed a "Clarification and Amendment to Strategic Alliance Agreement" ("Amended SAA") on May 9, 2011. ECF No. 34 at 27-31. The Amended SAA purports to be retroactive to January 18, 2010. Since the May 9 Amended SAA, Righthaven has subsequently contended, including contentions made in this case (ECF No. 31 at 11-15), that its standing should be determined under the Amended SAA.

4. *The "facts" as shown in the Restated SAA.* While Defendants' Motion to Dismiss (ECF No. 27) was pending, Righthaven attempted yet again to change the facts retroactively to January 18, 2010, by executing an "Amended and Restated Strategic Alliance Agreement" dated July 7, 2011 (ECF No. 32-1) ("Restated SAA"). Righthaven now contends, in this case (ECF No. 32-1 at 15-17) and in others, that its standing should be determined under the Restated SAA.

Defendants demonstrated in their Motion to Dismiss and Reply, and the judges of this District have held, that standing must be determined as of the time the complaint was filed. ECF No. 27 at 15-16; ECF No. 36 at 12-14 The original SAA was in effect at the time the complaint was filed, and thus Righthaven's standing, or lack of standing, must be determined by examining that document and the original assignment executed pursuant to it.

In preparing its Motion to Amend, Righthaven has apparently scoured the case law nationally going back to 1966. That Motion cites a large number of cases, but those cases are remarkable chiefly for their lack of applicability to the facts and law pertinent to the case at bar. *See* discussion in Part II, below. What Righthaven has *not* done is to cite *any* case in its Motion to Amend or in its Response in which a court has allowed a post-complaint assignment (and amended complaint based

- 3 -

on the assignment) to retroactively confer ownership of exclusive rights in a copyright, and thereby create standing, when the plaintiff did not own the exclusive rights at the time the complaint was filed.

Righthaven also has not refuted the fundamental principle that standing is determined as of the time the complaint is filed. Nor could it, because that fundamental legal rule is firmly established in Supreme Court and Ninth Circuit precedents. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1257 (9th Cir. 2010); *Scott v. Pasadena Unified School District*, 306 F.3d 646, 655 (9th Cir. 2002); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

Righthaven's arguments regarding standing have been rightly rejected by every judge in this District who has ruled on the issue of standing.[1] Because of the recentness (July 7, 2011) of the Restated SAA, to Defendants' knowledge only one Righthaven standing case has been decided in which Righthaven sought leave to amend based on the Restated SAA. *Righthaven LLC v. Pahrump Life*, 2:10-cv-1575-JCM-PAL (ECF No. 45). In that case, Judge Mahan dismissed for lack of subject matter jurisdiction and, significantly, also denied Righthaven's motion for leave to amend the complaint. ECF No. 63.

II.     **THE CASES CITED BY RIGHTHAVEN ARE INAPPLICABLE.**

Righthaven cites numerous cases which it contends would allow it to obtain standing through a retroactive amendment to its complaint. But the cases cited establish no such thing.

First, not one of the cases cited by Righthaven is a copyright case. Not one of them involved an attempt to confer ownership of exclusive rights (and thus standing) retroactively on an entity which did not own the exclusive rights at the time it filed suit.

---

[1] In their Reply on the Motion to Dismiss, Defendants cited five cases in this District in which Righthaven's standing contentions have been rejected. (ECF No. 34 at 3-4). Since the Reply was filed, Defendants have become aware of an additional Righthaven case that was dismissed for lack of standing. *Righthaven LLC v. Barham*, 2:10-cv-02150-RLH-PAL (ECF No. 20). Thus, at least six Righthaven cases have been dismissed for lack of standing by at least four judges of this District.

- 4 -

Second, several of the cases merely involve amendments to a complaint to correct defective allegations, not to attempt to change the facts themselves. *See* discussion of this distinction in *Righthaven LLC v. Democratic Underground*, ECF No. 116 at 7; *Righthaven LLC v. Mostofi*, ECF No. 34 at 6; Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 36 at 12). For example, *Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002), involved a claim that defendants were engaged in racial discrimination by a longstanding practice of siting landfills near predominantly African-American communities. The issue was the sufficiency of the complaint. The Court found that, assuming the First Amended Complaint "did not allege an ongoing violation of federal law, the Plaintiffs alleged an ongoing violation, as required by *Ex Parte Young*, in their Second Amended Complaint," and that amendment should have been allowed. *Id.* at 198-99. The case bears virtually no factual or legal resemblance to the case at bar.[2]

Similarly, in *Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82 (2d Cir. 1992), the issue did not involve an attempt to retroactively change the facts upon which the suit was based. Instead, the question was whether the plaintiff, in litigation over a complex commercial transaction, had the right to invoke New York's fraudulent conveyance statute. Finding that the plaintiff did not have that right under the legal theories that had been explicitly pled, the Court held that the plaintiff could attempt to plead an additional legal theory regarding injury arising out of the same basic facts on remand: namely, that "plaintiff's equitable cause of action to preserve the value of the secured property was effectively defeated by the conveyance of the cash assets to the partners. . . ." *Id.* at 88. Again, the issue was the sufficiency of what had been or could be pled, not an attempt to change the fundamental facts of the litigation or the nature of the transaction.

---

[2] *Ridgeway v. IBEW No. 134*, 466 F. Supp. 595 (N.D. Ill 1979) also turned on the sufficiency of allegations in the pleadings. That case was a Title VII discrimination case, involving allegations by black and Hispanic electrical workers against a labor union. The issue was whether, after a new plaintiff and new defendant had been added by an amended complaint, the complaint alleged a continuing violation sufficient to toll the running of the statute of limitations. The Court's holding was that "plaintiffs have adequately alleged a continuing violation and this action is not time barred." *Id.* at 599. It was not a standing case, and there was no attempt to amend the complaint to change the facts retroactively.

- 5 -

Third, several cited cases involved only the allowance of supplemental pleadings to correct allegations regarding procedural or technical matters about which there was no real dispute, and which did not relate to the underlying substantive merits of the case. *See, e.g., Lynam v. Livingstone*, 257 F. Supp. 520 (D. Del. 1966) (amendment allowed to reflect the formality of demand on corporation and refusal in derivative suit); *Bates v. Western Electric*, 420 F. Supp. 521, 524 (amendment "sets forth the uncontested facts" regarding procedures followed in EEOC proceedings in order "to cure pleading defects"); *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286 (8th Cir. 1988) (premature filing in ADEA case could be cured by supplemental pleading filed after 60 day waiting period).

Righthaven claims that "Courts routinely allow parties to file amended complaints in order to cure standing defects existing in the original complaints," citing "e.g." *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160 (D. Kan. 2009). However, in that case the district court acknowledged that her decision was *contrary* to the established rule, which she correctly stated to be: "A party must have standing to bring a patent infringement suit *at the time it is brought.*" *Id.* at 160 (emphasis added). The Court even quoted from a leading case on this point, *Enzo APA & Son, Inc. v. Geapag, A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998), as follows:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

*Bushnell*, 659 F. Supp. 2d at 1160.

Perhaps because *Bushnell* was a complex lawsuit involving multiple parties and claims under five separate patents,

- 6 -

the Court allowed an amendment, but doing so was contrary to well-established precedent, as the Court acknowledged.

Fourth, several of the cases cited by Righthaven are mischaracterized or are simply irrelevant. Righthaven cites *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 2011 WL 1312044, at *3-4 (N.D. Cal. Mar. 2, 2011) as, in Righthaven's words, "finding that amending complaint after patent assignment to plaintiffs cured prior standing defect and that dismissal of case would elevate form over substance." *Northstar* did not make such a finding. In fact, *Northstar* was not a patent case at all, but a securities class action case brought by a registered investment firm, serving private and institutional clients, against a fund that had sustained losses in risky investments. An amendment was allowed in that case where a client's *legal* claim was assigned (not copyright or patent ownership), largely because a prior judge had directed that the claim be assigned, and "it would be unfair to Plaintiffs to punish them for relying on the Court's specific instructions." *Id.*[3]

The facts and rules applied in *Valmet Paper Machinery, Inc. v. Beloit Corp.*, 868 F. Supp. 1085 (W.D. Wis. 1994), are also not comparable to this case. *Valmet* was a patent case, and the law regarding assignments of accrued causes of action and who must be joined as a party differs materially from copyright cases. In *Valmet*, the only right that was assigned was an accrued right to sue for past infringements which, unlike accrued rights in copyright cases, may sometimes be assigned without a concomitant assignment of ownership rights. The patent was expired, and there was no attempt to assign ownership of the patent itself after suit was filed. The case also did not involve whether an amended complaint should be allowed following the assignment. Because *Valmet* relies on principles of patent law that are different from and even contrary to copyright law, it cannot be applied here.

---

[3] The other securities litigation case cited by Righthaven is also of little or no relevance. *In re Vivendi Universal, S.A. Securities Litigation*, 605 F.Supp.2d 570 (S.D.N.Y. 2009). That putative class action case also involved a host of plaintiffs, largely foreign investment funds, in a mass suit involving the special principles applicable to standing in securities litigation. There, the court held only that "the real parties in interest should be allowed a reasonable time to ratify plaintiffs' lawsuit, join the action, or substitute for plaintiffs," and that an amendment would be necessary to sort out the proper parties. *Id.* at 585. It did not involve a party bringing suit who claimed ownership of a copyright or similar right, when that claim was plainly untrue, and then attempting to retroactively change the facts and amend the complaint.

- 7 -

Sometimes, as in describing *Northstar* as a patent case, Righthaven is flat wrong in its characterizations of the cases it cites. A particularly egregious example is *Galen Med. Assoc., Inc. v. United States,* 74 Fed. Cl. 377, 382 (Fed. Cl. 2006). Righthaven cites that case as standing for the proposition that: "amended complaint filed by re-instated corporation cured original standing defect in complaint that was filed when corporation was suspended." In fact, that case held the precise opposite:

> Here, Galen has neither requested, nor filed, an amended complaint, but as noted *infra*, any such filing would not alter the conclusion that it lacks standing. . . .
>
> The reasoning of *Computer Products* [*International, Inc. v. United States*, 26 Cl.Ct. 518, 524 (1992),] applies with equal force here. Reinstatement does not relate back to and cure Galen's lack of capacity to file the Complaint. . . .
>
> [B]ecause Galen was an involuntarily administratively and dissolved corporation under Mississippi law at the time the Complaint was filed, Galen did not have the capacity to commence this litigation and dismissal is warranted.

*Id.* at 382. The cases cited by Righthaven simply do not support the relief it requests.

**III.      TO ALLOW THE AMENDMENT WOULD CREATE JUDICIAL CHAOS.**

As described above, standing is to be determined as of the time the complaint was filed. None of the cases cited by Righthaven overturn that fundamental principle, and none has allowed a post-complaint assignment of exclusive rights in a copyright to confer standing retroactively, by means of an amended complaint, on a plaintiff that did not own those exclusive rights at the outset of the litigation.

But even if Righthaven had any colorable authority for its position, which (for good reason) it does not, allowing retroactive amendments would be an invitation to judicial chaos in the multiple suits Righthaven has filed. In the

- 8 -

topsy-turvy world of Righthaven, identical cases regarding standing may be decided based on any one of no fewer than four sets of "facts" (*see* Part I, above) depending on the whim of Righthaven and Stephens Media, and the particular time at which a court happens to render a decision. As noted in Defendants' Reply (ECF No. 36 at 6-7), at least three decisions by judges of this District were predicated on Righthaven's original (and false) representations that it owned exclusive rights in the copyright at issue. Approximately six others have been based on the facts established by the revelation of the original SAA. *See* above. At least one of these six cases was decided after a substantive consideration and analysis of the May 9, 2011, Amended SAA. *Righthaven LLC v. Hoehn*, 2:11-cv -00050-PMP-RJJ, ECF No. 28. Now, Righthaven argues that standing should be decided based on yet another state of facts, those allegedly established retroactively by the July 7, 2011 Restated SAA.

Righthaven is apparently of the view that the "facts" can be changed by it, unilaterally and retroactively, to suit its litigation convenience as it has already done, or as it may do any time in the future. In its Response to Defendants' Motion to Dismiss (ECF No. 31 at 17), Righthaven states, with no apparent irony:

> Quite frankly, Righthaven has sought to fully address all of the concerns expressed in the *Hoehn* decision. In doing so, this Court is presented with record [sic] that is unlike those at issue in either the *Democratic Underground* or the *Hoehn* decisions. Most importantly, however, Righthaven has protectively [sic] addressed the concerns expressed as an impediment to it having standing.

But federal courts are not a forum in which a party with no real interest in an underlying dispute can continually and retroactively manufacture "a record" that will enable strike suits to be brought to extort quick settlements. The federal courts exist to resolve real disputes between parties who actually have an interest in the dispute, not to facilitate hundreds of lawsuits by an interloper that was specially created to engage in mass litigation for profit.

The proposed Amended Complaint would further confuse, not resolve, the inconsistencies and shifting bases on

- 9 -

which Righthaven has pursued this litigation. Righthaven apparently believes that the Amended Complaint should "relate back" to the filing of the complaint on September 28, 2010. But the proposed Amended Complaint itself cites the Amended SAA and the Restated SAA that were signed on May 9, 2011, and July 7, 2011. ECF No. 35-1, ¶¶ 25-26. The Amended SAA and Restated SAA are both said to be retroactive to the effective date of the SAA (January 18, 2010). How can a document "filed" as of September 28, 2010, cite events that took place in the spring and summer of 2011, which are then themselves to be considered to have occurred on September 28, 2010, and then have retroactive effect to January 18, 2010? Are all decisions by the courts of this district since the SAA was revealed now turned into nullities by Righthaven's unilateral action on July 7, 2011? From what date are the Amended SAA and Restated SAA supposedly retroactive? From May and July of 2011? From September 2010, since the amended complaint is supposed to "relate back" to that date? Will the effective date be different in every Righthaven case, because the complaint date to which the amendment "relates back" will be different in different cases?

Righthaven further references what it calls "the Assignment" in the proposed Amended Complaint, and talks about sequences of events relating to the "Assignment." But which "assignment"? The assignment that was actually made on July 27, 2010 (ECF No. 32-2), and that formed the basis for this suit, and for Righthaven's application for copyright registration? Or the purportedly revised terms of the "assignment" as specified in May 9 Amended SAA? Or the purportedly revised terms of the assignment as specified in the July 7 Restated SAA? All three assignments are different, but the proposed Amended Complaint does not distinguish among them. Or will the operative language be a purported revision to the assignment that may take place in the future?

The answers to all of these questions, of course, is: whatever suits Righthaven's current litigation needs. But that cannot be a satisfactory answer for this Court, or for Defendants, neither of which should have to sort out continually shifting,

- 10 -

retroactive "facts" manufactured by Righthaven for its own convenience.

Righthaven contends that the court should freely give leave to amend "when justice so requires." Motion to Amend at 4. Defendants respectfully submit that any invocation by Righthaven of "justice" comports ill with the conduct by Righthaven that led to its Motion to Amend. The only reason Righthaven is seeking to amend its complaint is that its central claim, repeated in hundreds of lawsuits, that it held the "exclusive rights" to the copyrights was finally exposed to be deliberately false. Justice does not require that the courts acquiesce in Righthaven's contorted maneuvers in order to provide it more latitude to continue this abusive litigation. As the judges in this District have previously had occasion to recognize, justice and the letter of the law require instead that these suits be dismissed.

## CONCLUSION

For the foregoing reasons, Righthaven's Motion for Leave to File First Amended Complaint should be denied.

DATED:   August 8, 2011.

                                              Respectfully submitted,

                                              /s/ Dan M. Peterson
                                              Richard E. Gardiner (Pro Hac Vice)
                                              Attorney at Law
                                              DAN M. PETERSON PLLC
                                              Dan M. Peterson (Pro Hac Vice)
                                              3925 Chain Bridge Road, Suite 403
                                              Fairfax, VA 22030
                                              Tel: (703) 352-7276
                                              Fax: (703) 359-0938
                                              Email: regardiner@cox.net
                                              Email: dan@danpetersonlaw.com

                                                   -and-

                                              PARSONS, BEHLE & LATIMER
                                              Robert W. DeLong, NV Bar No. 10022
                                              50 W. Liberty Street, Suite 750
                                              Reno, Nevada 89501
                                              Tel:    (775) 323-1601
                                              Fax:    (775) 348-7250

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Email:   rdelong@parsonsbehle.com

Attorneys for Defendants

- 12 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of August, 2011, I filed a true and correct copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT with the Clerk of the Court using the Court's CM/ECF system, which sent electronic notification to all registered users as follows:

J. Charles Coons, Esq.
Joseph C. Chu, Esq.
Righthaven LLC
9960 W. Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129

Shawn A. Mangano
Shawn A. Mangano, Ltd
9960 West Cheyenne Avenue
Suite 170
Las Vegas, NV 89129

/s/ Dan M. Peterson
Dan M. Peterson

- 13 -